By the Court, Paige, P. J.
Upon the facts disclosed in the answer I cannot see how the sale, by Hart, of his stock of goods in his store to Miller, can be upheld. Hart and Miller admit, in the answer, that on the 13th of October, 1840, the day of the sale, Hart was largely in debt, and embarrassed in his business and unable to pay his debts, and that for the purpose of avoiding a great sacrifice of his goods, and of applying the whole of the same in a just and equitable manner, he sold such goods to Miller for $1500, and received from him two notes for $400 each, payable in one and two years after date, and allowed the residue of the purchase money to be retained by Miller in payment of a debt of $63 which Hart owed him, and to secure him for his liabilities as endorser or surety for the then late firm of Miller <fc Hart. And Hart and Miller also admit in their answer that the paper on which Miller was either endorser or surety for the firm of Miller & Hart was not taken up by Miller, and that the same remained unpaid. Miller knew, when he purchased the goods, that Hart had been prosecuted; and he undoubtedly also knew that he was then insolvent. And although he had, by the purchase of the goods, received the full amount of the note on which he was endorser or surety, such notes remained unpaid, and Hart continued liable thereon. From these facts, and from the fact that the goods were sold to Miller on a long credit, it seems to me that the inference must be deduced that the sale of the goods was made with the intent to hinder, delay and defraud creditors. The single fact of a sale of all Hart’s goods on a credit of one and two years for the greatest portion of the purchase money, when he was irretrievably insolvent, and while suits against him by his creditors were pending, is quite conclusive as to the intent to hinder, delay and defraud his creditors. The sale of the goods in the store must be adjudged fraudulent and void. I think the allegations in the bill sufficient to put in issue the validity of this *94 sale; and if the plaintiffs had not examined Miller as a witness, they could have reached, in this suit, the goods sold and delivered to him, or would have been entitled to a decree against him for their proceeds. But the plaintiffs, by examining Miller, as a witness, have precluded themselves from having any decree against him as to the part of the case to which he was examined. (Bradley v. Root, 5 Paige, 636, 637. 4 Id. 130. 2 Edw. Ch. Rep. 194.)
The assignment to Livingston is not fraudulent on its face. It devotes, unconditionally, the whole of the property assigned to the payment of the debts of the assignor. It contains no reservation or condition for his benefit. It contains no provision calculated to hinder or delay creditors. By the assignment the assignee was bound immediately to convert the property assigned into money, and apply the proceeds in payment of the debts, in the order directed in the assignment. A man in embarrassed or insolvent circumstances, is not precluded from making an assignment of his property, in trust for the payment of his creditors. His assignment is valid if it unconditionally and absolutely devotes the whole of the property assigned to the payment of his debts, if it be made without any intent to hinder, delay or defraud his creditors. And if the assignment is valid in its creation, no subsequent fraudulent or illegal acts of the parties can invalidate it. There was no necessary connection between the sale of the goods in the store, and the assignment. And I do not think the evidence authorizes the conclusion that Livingston, when he accepted the assignment, did so with the intent to hinder, delay or defraud the creditors of Hart. The provision of the revised statutes (2 R. S. 136, § 5) which requires the immediate delivery, and an actual and continued change of possession of goods and chattels sold, mortgaged or assigned, does not embrace choses in action. Undoubtedly the non-delivery of a chose in action at the time of its assignment is, at common law, a badge of fraud, but it is not conclusive evidence of fraud, and may be explained. The defendants, in their answer, I think, sufficiently explain why the assignee did not take actual and immediate possession of the household. *95 furniture embraced in the assignment. I have a right to infer from the evidence that Livingston, on receiving the assignment, did take actual possession of all the books, notes, and accounts of Hart, except of one of the notes given by Miller on the purchase of the goods in the store, and that he retained the possession of them until the 22d of October, when he appointed Hart his agent to collect the choses in action assigned. Although the appointment of Hart as such agent should be regarded with suspicion, I do not think it, alone, or in connection with the other facts in the cause, sufficient evidence of an original intent on the part of the assignor and assignee, or of either of them, to defraud creditors. A fraudulent intent, entertained subsequent to the execution and delivery of the assignment, will not invalidate it. The allegation in the bill is not sufficient to raise the question as to the effect of the appointment of an insolvent, as an assignee. The bill does not allege that Livingston was insolvent. It merely states that he is not responsible for $10. To bring the case within that of Reed v. Emery, (8 Paige, 417,) the assignee must not only be insolvent, but he must be known to be so by the assignor, at the time of the execution of the assignment.
Upon a careful examination of the whole case, I have come to the conclusion that the assignment must be declared to be a valid assignment.
In Brownell v. Curtis, (10 Paige, 219,) the chancellor decided that where an insolvent debtor makes a fraudulent transfer of his property, he can not, by an assignment wholly voluntary on his part, take away the right of his creditors generally, to set aside such fraudulent transfer, and transfer that right to his own assignee, for the benefit of preferred creditors, or of all his creditors equally. According to this decision, the right of the creditors of Hart to set aside the fraudulent sale of his goods in the store, to Miller, was not taken away by his assignment to Livingston. If the plaintiffs had not examined Miller as a witness, they would have been entitled to a decree against him for the value of the goods delivered to him by Hart; and the result of such a decree would have been that he would *96 have been relieved from the payment of the two notes of $400 each, given by him to Hart in part payment of the price of the goods. One of these notes was delivered by Hart to Miller to secure him for liabilities assumed by the latter, on the compromise of two of Hart’s New-York debts. The question now arises whether the plaintiffs are not entitled to a decree that the defendant Livingston deliver over to the receiver in this cause the remaining note of $400 against Miller, still in the hands of Livingston; or that the decree of the vice chancellor, against Livingston, be affirmed, so far as it relates to this note. It seems to me that if the assignment to Livingston did not transfer to him the right of the creditors of Hart to set aside the sale of the goods to Miller, Livingston did not, as assignee, acquire any right to the note given by Miller for the price of the goods, the fruit of such fraudulent sale, as against the creditors of Hart. The creditors, in a suit against Miller to set aside the sale of the goods to him, could have elected to limit then remedy against him to the amount of the notes given by him in payment for the price of the goods, without affirming the validity of the sale; or in other words, they could have adopted the amount of the notes, as a liquidation in part, of the value of the goods sold, without an affirmance of the sale. Miller, as to the $400 note in the hands of Livingston, has no beneficial interest in resisting a decree for its payment to the receiver, or rather for the payment to such receiver of a like sum, in lieu of such note, as in part for the value of the goods sold and delivered to him by Hart. For it will be immaterial to him whether he pays that sum to the receiver or to the assignee. The rule precluding a plaintiff from having a decree against a defendant whom he examines as a witness, does not extend to that part of the case to which he does not examine him, or as to which he has no beneficial interest in resisting a decree in favor of the plaintiff. (5 Paige, 636, 637. 1 Barb. Ch. Pr. 259. 2 Edw. Ch. Rep. 192.) The form of the decree of the vice chancellor creates no difficulty in modifying it so as to give the plaintiffs a remedy against Miller to an amount equal to the sum due on the note against him in the hands of the as *97 signee. For the court, on the appeal, can annul, affirm, modify or alter the decree of the vice chancellor, or make any other-order in the cause, as justice may require. (2 R. $. 178, § 62.)
Whether Miller can hold the note delivered to him by Hart will be a question to be settled between him and the assignee, or the creditor, preferred in the assignment. If the property assigned is not sufficient to satisfy the debts of the creditors preferred in the assignment before those compromised by Miller, he may be liable to pay such creditors the amount of that note; especially if he received it from Hart with notice of their rights. (5 Wend. 20, 566. 12 Id. 484.)
All three of the defendants united in a joint appeal from the decree of the vice chancellor. Hart had no interest in the question as to the validity of the assignment. Whether the assignment is upheld or set aside, his property must alike be applied in payment of his debts. He was not injured by that part of the decree which set aside the assignment; and he could not, therefore, appeal from it. The residue of the decree, as to him, was correct, and must be affirmed. The decree, so far as it sets aside the assignment and charges Livingston with costs, and directs him to deliver over to the receiver all property of the defendant Hart, which came into his hands under the assignment, (except as to the note of $400 given by the defendant Miller, now in his possession,) must be reversed. And the decree must be so modified as to declare that the sale of the goods in the store of Hart, by him to the defendant Miller, was and is fraudulent and void as against the plaintiffs. And the decree to be entered on this decision must direct that the defendant Livingston deliver up to the receiver such remaining note of $400 given by Miller to Hart; and that the defendant Miller pay to such receiver, or to the plaintiffs, such amount of the value of the goods so delivered to him by the defendant Hart, on the sale aforesaid, as shall be equal to the amount due on the said note of $400, and that on such payment being made, such note be delivered up to the said Miller; such sums so paid, to be applied on the debt of the plaintiffs against the defendant Hart. No costs in the suit before the vice chancellor should, under the *98 circumstances, be allowed to Miller, although he was examined as a witness by the plaintiffs. The bill was properly filed against him, as to that part of the case in which he was interested, and the suit properly proceeded against him to obtain relief as to such part of the case. If he had not been examined as a witness he would have been liable to pay costs. Livingston is not entitled to costs in the suit before the vice chancellor, because the plaintiffs were entitled to relief against him as respected the note for $.400 in his hands, and because there were some circumstances of suspicion, growing out of his employment of Hart as his agent to collect the choses in action assigned, which probably induced the plaintiffs to file their bill to set aside the assignment. No costs can be allowed to either party on the appeal. Where- there is a joint appeal by two or more defendants, and the decree is affirmed as to one and reversed as to the others, or where the decree is in any other respect affirmed in part and reversed in part, no costs are allowed to either party on the appeal. A decree must be entered in accordance with the principles of this decision and the above directions.