[No. 13347.   Department One. —February 28, 1890.]

## WILLIAM INGRAM, JR., ASSIGNEE, APPELLANT, v. R. D. SMITH ET AL., RESPONDENTS.

ASSIGNMENT FOR BENEFIT OF CREDITORS— CANCELLATION OF FRAUDULENT NOTE AT SUIT OF ASSIGNEE — INJUNCTION. — An assignee for the benefit of creditors may maintain an action for the cancellation of a fraudulent note given by the insolvent to a pretended creditor with whom he has conspired to defraud his *bona fide* creditors, such note having been executed for that purpose, without consideration, though purporting to have been made for a valuable consideration, and scheduled by the insolvent, so as to be *prima facie* a charge against his estate in the hands of the assignee, if the estate appears to be insufficient to pay the *bona fide* creditors in full; and if the date and time of maturity of such fraudulent note are unknown to the assignee, and the facts justify an apprehension that it may be transferred before maturity so as to result to the injury of *bona fide* creditors, the assignee is entitled to an injunction to prohibit its transfer.

CANCELLATION OF VOID OR VOIDABLE INSTRUMENT. — A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled.

APPEAL from a judgment of the Superior Court of Placer County.

The facts are stated in the opinion.

*L. T. Hatfield,* and *J. M. Fulweiler,* for Appellant.

*D. W. Spear, E. L. Craig,* and *Wallace & Prewett,* for Respondents.

GIBSON, C. — Plaintiff appeals from a judgment for defendants, rendered upon their general demurrer to his amended complaint.

It appears from the complaint, which contains much evidential matter that should have been omitted, that on November 8, 1888, Smiley, being then insolvent, made an assignment for the benefit of his creditors to the plaintiff, who accepted the trust and qualified as such assignee.

Smiley, on the third day of October of the same year, was, and for a long time prior thereto had been, engaged in the business of dealing in merchandise, and was indebted to divers parties in different amounts, aggregating more than five thousand dollars, which he was, on the last-mentioned date, unable to pay in accordance with the terms of his several obligations, although possessed of personal property reasonably worth six thousand dollars. On or about that date, Smiley, for the purpose of hindering, delaying, and defrauding his creditors, and of securing to himself and his co-defendant, Smith, the benefit of his property, fraudulently entered into an agreement with him, the terms of which are to plaintiff unknown, but the moving consideration was, that Smiley was to pretend to convey and assign to Smith all his property for the alleged consideration of two thousand three hundred dollars, asserted to be due to Smith from Smiley, when in fact he was not in any way indebted to Smith. Pursuant to this transfer, Smith claimed to be in possession of all the property from the 3d until the 22d of October, 1888, during all of which time, however, Smiley continued to exercise acts of ownership over it, making sales of merchandise, taking pay therefor, and communicating with his creditors as though he had not parted with his property. Smith, who is, and was at all times mentioned in the complaint, without property, and wholly dependent upon his earnings for a livelihood, knew of the insolvency of Smiley; and all his acts performed in concert with Smiley were for the purpose of cheating the creditors of the latter for their joint benefit.

About October 20, 1888, a firm of wholesale dealers in Sacramento, who were creditors of Smiley, first learned of the transfer to Smith, Smiley having never prior to that time disclosed to his creditors that Smith was one of them. On the 22d of the same month, after an interview with a member of the said firm, Smiley procured

Smith to make him a deed, which expressed no consideration, purporting to reconvey the real property, embracing the store previously conveyed to him by Smiley. The latter upon receiving the deed placed it on record, and thereupon made and caused to be recorded a declaration of homestead upon the same property. Thereafter, and in furtherance of their corrupt agreement, Smiley made and delivered to Smith, without receiving any consideration therefor, his promissory note for one thousand dollars, the true time and date of which are unknown to plaintiff; at the same time he delivered to Smith two solvent interest-bearing notes payable to himself for the sum of $720 and $750 respectively. On November 18th, in furtherance of their fraudulent design, Smith represented to the maker of the $750 note that he was the *bona fide* owner of it, and procured from him, in payment of it, a deed to a one-twentieth interest in a mining claim of the value of five hundred dollars. The other note is worth seven hundred dollars. Smiley fraudulently included in his schedule of indebtedness the name of Smith as one of his creditors on account of the note for $1,000.

The plaintiff, after qualifying as assignee, took possession of the stock of merchandise and other personal property, all of which personalty, with the exception of the stock of merchandise, was estimated by Smiley at a much greater value than it was reasonably worth; some of the notes and accounts being, at the time, barred by the statute of limitations. The two notes delivered by Smiley to Smith with the $1,000 note have not been offered to plaintiff. The actual value of Smiley's assets will not exceed $5,000. His total indebtedness, as scheduled, including the $1,000 on the note to Smith, is $6,121.75, and is all justly due, except the amount of said note. Creditors' claims to the amount of $419.83 have been exhibited to the assignee, and the expenses of executing the trust imposed by the assignment will

be at least $800. These last two amounts, added to the scheduled indebtedness, less the $1,000 on the note to Smith, bring the total liabilities up to $6,341.58. And unless the note for $1,000, held by Smith, is canceled, the creditors of Smiley will not receive more than eighty per cent of their demands against him. The prayer is, among other things, for a temporary injunction to restrain Smith from negotiating the note; and that he be required to deliver it for cancellation *in toto*, or to such an extent as will enable the creditors to obtain the full amount of their claims.

The assignment in this case was made pursuant to division 4, part 2, title 3, of the Civil Code, the first provision of which is as follows:—

"Sec. 3449. An insolvent debtor may, in good faith, execute an assignment of property to one or more assignees, in trust for the satisfaction of his creditors, in conformity to the provisions of this chapter; subject, however, to the provisions of this code relative to trusts and to fraudulent transfers, and to the restrictions imposed by law upon assignments by special partnerships, by corporations, or by other specific classes or persons."

By section 3439, under the title relating to transfers with intent to defraud creditors, referred to in the section quoted, it is provided that "every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken, with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

The promissory note to Smith, which, upon its face, purports to have been made for a valuable consideration, having been given by Smiley to and received by Smith for the purpose of defrauding the creditors of the former, clearly constitutes such an obligation as is contemplated

by section 3439, and is therefore void against all of Smiley's creditors, and also the plaintiff, upon whom the estate of Smiley devolved for the benefit of his creditors.

"A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." (Civ. Code, sec. 3412; 3 Pomeroy's Eq. Jur., sec. 1377.)

From the fact that the note is scheduled as one of the insolvent's items of indebtedness, it is *prima facie* a charge against his estate in the hands of the plaintiff. As the estate is insufficient to pay the *bona fide* creditors in full, it is manifest that although the plaintiff, as assignee, knowing the note to be frandulent and without consideration, might successfully resist the payment of it, yet Smith, before it matures, may, unless restrained, transfer it for value to an innocent purchaser, who could enforce it, and thereby cause serious injury to such creditors by reducing the already insufficient assets of the estate. The date and time of maturity of the note are both unknown to plaintiff; but in view of the other facts stated, his apprehension that it may not have matured, and may be so used as to result in injury to the beneficiaries of the trust imposed upon him, is well founded.

For these reasons, we think the court erred in sustaining the demurrer, and we therefore advise that the judgment be reversed, and the trial court directed to overrule the demurrer, and grant the defendants leave to answer.

VANCLIEF, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is reversed, and the trial court is directed to overrule the demurrer, and grant the defendants leave to answer.