[No. 13956. In Bank. — March 30, 1892.]

## ANDY W. FRANCISCO, JR., RESPONDENT, v. MARTIN G. AGUIRRE ET AL., APPELLANTS.

SALE — DELIVERY AND CHANGE OF POSSESSION. — Upon the execution of a bill of sale, the title to the property sold, as between the parties to the instrument, vests in the purchaser, although the sale was unaccompanied by an actual delivery and continued change of possession; and the purchaser may at any time maintain an action against the seller to recover the possession, irrespective of such delivery.

ID. — ASSIGNMENT FOR BENEFIT OF CREDITORS — POWER OF ASSIGNEE. — An assignee for the benefit of creditors acquires, subject to the statutory restrictions, only those powers and rights in reference to the property assigned which are embraced in the instrument of assignment.

ID. — FRAUDULENT CONVEYANCE — ASSIGNEE CANNOT MAINTAIN ACTION TO RECOVER PROPERTY. — In the absence of any statute giving such power, an assignee for the benefit of creditors cannot maintain an action to recover property that has been conveyed by his assignor in fraud of his creditors. In this state, no such special power is given to the assignee by statute.

ID. — DEVOLUTION OF ESTATE. — An assignee for the benefit of creditors is not a person upon whom the assignor's estate has "devolved" for the benefit of others than himself. An estate "devolves" upon another when by operation of law, and without any voluntary act of the previous owner, it passes from one person to another; but it does not devolve *from* one person to another as the result of some positive act or agreement between them.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Anderson, Fitzgerald & Anderson,* for Appellants.

*Thomas J. Carran,* and *James M. Damron,* for Respondent.

HARRISON, J. — In October, 1888, Mrs. M. E. Edmonston, being the owner of certain household furniture then situate in the Ramsay House, at Los Angeles, executed a bill of sale thereof to Martha O'Hara for the sum of $825, and at the same time received from her a lease of the same furniture until February 1, 1889, that being

the date at which a lease of the Ramsay House would expire.    On the first day of February, 1889, Mrs. O'Hara made demand of Mrs. Edmonston for the possession of the furniture, and upon being refused such possession, on the next day began an action of claim and delivery therefor.    At the time of making the bill of sale, Mrs. Edmonston was indebted to various parties, and on the morning of February 2d made an assignment to the plaintiff for the benefit of her creditors, which was filed for record in the recorder's office at ten minutes after nine o'clock of that morning.    The plaintiff did not, however, take possession of the furniture on that day, and, later in the day, the defendant Aguirre, as the sher- iff of the county, took the property under directions therefor given by the plaintiff in the action of Mrs. O'Hara, and " when the plaintiff went there two or three days later," he found the sheriff in possession under those proceedings.    The defendant in that action not having demanded a redelivery of the property, the sheriff, on the 9th of February, turned the property over to Mrs. O'Hara.    The present action was brought by the plaintiff against the sheriff and Mrs. O'Hara for a con- version of the property, in which a verdict and judg- ment was rendered in his favor, and from which, and an order denying a new trial, the defendants appealed.

The question presented upon the appeal is the valid- ity of the sale from Mrs. Edmonston to Mrs. O'Hara, and the right of the plaintiff to question such validity.

At the trial the court instructed the jury as follows: "In this case if you should find from the evidence that the transfer made by Mrs. Edmonston to Mrs. O'Hara was in fact an actual sale of the property in question, but that the vendor, Mrs. Edmonston, did not make an im- mediate and actual delivery of the property so sold to the vendee, or if such delivery, then that the same was not followed by an actual and continued change of the pos- session of the property so sold, then such a transfer would be wholly void as against this plaintiff, and would not affect any rights acquired by him as assignee of the

said Mrs. Edmonston.   If the jury should find from the evidence that the instrument executed by Mrs. Edmonston to Mrs. O'Hara, and designated as a bill of sale, was in fact made for the purpose of securing an indebtedness then existing between the parties, and to become due thereafter, then such a transaction would not constitute an actual sale of the property, but would be more in the nature of a mortgage.   In that event, unless it appears to your minds that such mortgage was given to secure the purchase price of the property so mortgaged, then the transfer would be void as to this plaintiff."

Other instructions of the same import were given by the court.

Upon the execution of the bill of sale to Mrs. O'Hara, the title to the property therein described vested in her; and although, without an actual delivery and a continued change of possession, such title could not be asserted by her against the creditors of her vendor, yet, as between the parties to the instrument, she could at any time maintain an action to recover the possession from her vendor, irrespective of such non-delivery.   The plaintiff, as the voluntary assignee of Mrs. Edmonston, acquired no greater right in the property than she had at the time of the assignment.   As the statute stood at the date of this assignment to the plaintiff, an assignee for the benefit of creditors was selected by the assignor, and, subject to the statutory restrictions, acquired only those powers or rights in reference to the property assigned which were embraced in the instrument of assignment.

Upon the principle that an assignor cannot confer upon his assignee any greater right than he himself had in the property, it is held, in an almost unbroken line of authorities, that, in the absence of any statute giving such power, the assignee cannot maintain an action to recover property that had been conveyed by his assignor in fraud of his creditors.   This rule rests upon the ground that the assignee is merely the representative of his assignor, and does not represent the creditors, and

that, notwithstanding the assignment, they are not bound to accept its provisions, but may themselves subject such property to the satisfaction of their debts.   This right is held by them, not as beneficiaries under the assignment, or by virtue of any of its provisions, but as creditors of the assignor, and wholly independent of its provisions.

" Under the common law of assignments, the assignee stands in the place of the assignor, and can assert no claim to property which the assignor might not.   The assignment, therefore, does not carry with it to the trustee the title to property which the assignor has previously transferred in fraud of his creditors, for the purpose of hindering, delaying, and defrauding them." (Burrill on Assignments, sec. 110.   See also Wait on Fraudulent Conveyances, sec. 115; *Brownell* v. *Curtis*, 10 Paige, 219; *Estabrook* v. *Messersmith*, 18 Wis. 551; *Hawks* v. *Pritzlaff*, 51 Wis. 160; *Vandyke* v. *Christ*, 7 Watts & S. 373; *Marks's Appeal*, 85 Pa. St. 233; *Housel* v. *Cremer*, 13 Neb. 298; *Keller* v. *Smalley*, 63 Tex. 520; *Heinrichs* v. *Woods*, 7 Mo. App. 236; *Browning* v. *Hart*, 6 Barb. 91; *Leach* v. *Kelsey*, 7 Barb. 470; *Warner* v. *Jaffray*, 96 N. Y. 254; *Flower* v. *Cornish*, 25 Minn. 473; *Wakeman* v. *Barrows*, 41 Mich. 363; *Stewart* v. *Platt*, 101 U. S. 739; *Wilson* v. *Randall*, 14 R. I. 621.)

The question has been presented more frequently in cases in which the assignee has sought to recover property held by way of a mortgage executed by the assignor, but which was invalid by reason of failure to observe some of the requirements of the statute in reference to such mortgages.   In these cases the same principles have been asserted as in other transfers which are declared fraudulent as against creditors, since it is only by reason of a statutory exception that personal property can be transferred by mortgage; and unless the statutory requirements are followed, the transfer is subject to the general provision requiring a delivery and change of possession.   In *Van Heusen* v. *Radcliff*, 17 N. Y. 580, the owner of certain furniture had made a chattel mortgage, which was not recorded, as required

by statute, and afterwards made a general assignment to the defendant for the benefit of his creditors; but the court held that the defendant was not a *bona fide* purchaser, and could not retain the proceeds of the property for the benefit of the creditors of his assignor, saying: "When a conveyance is said to be void against creditors, the reference is to such parties when clothed with their judgments and executions or such other titles as the law has provided for the collection of debts. The beneficiaries under the voluntary assignment to the defendant are not in a condition to claim the rights of creditors, or to question the prior dispositions of their debtor, which he could not himself have avoided."

In some states provision has been made by statutes giving express authority to the assignee to maintain actions for the recovery of property that had been disposed of by his assignor in fraud of his creditors, and declaring that for such purposes the assignee shall represent the creditors. (See Burrill on Assignments, sec. 395.) In other states the assignee has been held to have such right, upon the ground that, by virtue of statutory provisions, the assignment partakes so far of the nature of a proceeding in bankruptcy that the assignee succeeds to the same rights as does an assignee in bankruptcy. In New Jersey this rule is upheld, upon the ground that the statutes provide that the assignor shall receive a full discharge and release as to all of the creditors who come in under the assignment. (*Pillsbury* v. *Kingon,* 33 N. J. Eq. 299.) In that state it is, however, held that, except in cases of actual fraud, the assignee is in the same position as his assignor, and that he cannot avail himself of a mere statutory fraud, such as a failure to have a chattel mortgage properly recorded. (*Shaw* v. *Glen,* 37 N. J. Eq. 32.)

The statutes of this state concerning assignments for the benefit of creditors give no special power to the assignee, and expressly declare that the assignment is to be subject to the provisions of the code respecting fraudulent transfers. One of these provisions is that which

requires an actual delivery and continued change of possession, thus placing the assignment upon the same footing as any other transfer of personal property. Whether the plaintiff herein could have successfully defended an action against him by Mrs. O'Hara, had he taken possession of the property at the time of the assignment, need not be determined. He did not take such possession, but merely "went down to the house, and looked through the house at the furniture, and left Mrs. Edmonston in possession." This was consistent with his recognition of the rights of Mrs. O'Hara, since the assignment from Mr. Edmonston purports to assign to him only " all of her property "; and if the plaintiff had intended to claim this, he, by leaving her in possession, did the same act which he now charges upon the defendant as fraudulent.

The plaintiff is not himself a creditor of Mrs. Edmonston, and instead of having succeeded to the interest of any of her creditors, his relation to her estate as assignee for their benefit would itself preclude him from succeeding to their interest. Neither is he a person upon whom her estate has devolved for the benefit of others than himself. An estate is said to " devolve " upon another when by operation of law, and without any voluntary act of the previous owner, it passes from one person to another; but it does not devolve *from* one person to another as the result of some positive act or agreement between them. The word is itself of intransitive signification, and does not include the result of an act which is intended to produce a particular effect. It implies a result without the intervention of any voluntary actor. Instances of its appropriate use are found when speaking of the succession of estates upon death, or upon a change of official incumbents; also in proceedings in bankruptcy or insolvency, where, by the act or operation of law, the estate of the bankrupt devolves upon his assignee. (*Merrill* v. *Hurlburt,* 63 Cal. 494; *Brown* v. *Bank of Napa,* 77 Cal. 544.)

The question presented in this case did not arise upon

the facts presented in *Ingram* v. *Smith*, 83 Cal. 234. The assignee in that case was in possession of the property that·had been assigned to him, and was seeking to defend that possession against a promissory note in, the hands of Smith, which had been executed by Smiley without any consideration therefor. Smiley could himself have mantained the same action, as the note in Smith's hands, having been given without consideration, was not enforceable against him, and Ingram, as his assignee, had the same right that Smiley had to protect the estate received by him under the assignment against a claim upon this note, either by a defense to a suit thereon, or by an action for its cancellation. There is a manifest difference between defending against a fraudulent claim property that has been actually received under the assignment, and seeking to recover property to which the assignor could assert no title, even though his creditors might subject it while in his possession to the payment of their debts against him. The statement in *Ingram* v. *Smith*, that the estate of Smiley had devolved upon the plaintiff for the benefit of the creditors, was but a *dictum*, since the right of Ingram to maintain the action did not depend upon the mere fact that he was the assignee of Smiley, but arose from the fact that, being in possession of property under a trust which he had assumed, he was bound to protect it for the benefit of the beneficiaries, and had the same right to defend it against a false claim as if it had belonged to himself. In *Sandwich Mfg. Co.* v. *Wright*, 22 Fed. Rep. 631, it was held that although the assignee had no right to recover property that had been fraudulently conveyed by his assignor, yet he had the right to resist a fraudulent claim against property in his hands, the court saying: " It is the duty of the assignee in the performance of his trust to defend this property against all unjust adverse claims. He takes the property, not as a purchaser, but subject to all rights and equities subsisting against it in favor of third parties, and in that sense he is said to succeed only to the rights of his assignor. The right of

creditors to attack a mortgage as fraudulent, growing out of equities existing in their behalf, does not pass to the assignee, in the absence of statutory provisions to that effect, and none such are found in the statutes of Iowa. In the present case, the right of the assignee to defend against a foreclosure of the mortgage is not based upon a transfer of the rights and equities of the creditors, but upon the fact that the title of the property has been vested in him in trust for the creditors, and that having accepted the trust, he is charged with the duty of protecting the property against all fraudulent claims."

As the plaintiff had no right to the furniture as against the claim of Mrs. O'Hara, he could not maintain an action against her for its conversion. The sheriff was only her agent in the matter, and, in the absence of any liability on her part, was not himself liable to the plaintiff.

The judgment and order denying a new trial are reversed.

McFARLAND, J., SHARPSTEIN, J., GAROUTTE, J., and DE HAVEN, J., concurred.

BEATTY, C. J., dissented.

PATERSON, J., dissenting. — I am unable to concur in the views expressed by the majority in this case. I think the judgment should be affirmed.

It is not denied that the conveyance was void as to creditors, under section 3440 of the Civil Code; but it is claimed that the assignee acquired no greater right than the assignor had in the property at the time of the sale, — that the assignee is merely the representative of his assignor, and does not represent the creditors.

It must be admitted that under the common law of assignments the assignee stands in the place of the assignor, and can assert no right to the property which the assignor did not have, but the rule of the common law is not applicable here; the rights of the parties are

to be determined under the statute relating to assignments for the benefit of creditors. The duties and powers of assignees under the statute are very different from the duties and powers of assignees at common law.

Section 3449 of the Civil Code provides that an insolvent debtor may execute an assignment of property to one or more assignees, in trust for the satisfaction of his creditors, subject, however, to the provisions of the code relative to trusts and fraudulent transfers; and section 3439 provides that " every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken with intent to delay or defraud any creditor or other person of his demands, is void against all creditors of the debtor, and their successors in interest, *and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor.*" It cannot be questioned that the estate of the debtor in this case devolved upon the assignee in trust for the benefit of others than the debtor himself. The case is therefore within the letter and spirit of the statute. The transfer of the property was fraudulent; it was absolutely void as to creditors; and, as the statute declares, it was void as to the assignee, upon whom all the estate of Mrs. Edmonston devolved.

In *Ingram* v. *Smith*, 83 Cal. 237, the court said that the note there under consideration was "void against all of Smiley's creditors, and also the plaintiff, upon whom the estate of Smiley devolved for the benefit of the creditors." It may be that this statement was mere *dictum*, but it is evidently in accord with the letter and the spirit of our statute. In *Hanes* v. *Tiffany*, 25 Ohio St. 552, the court said: " It is, however, contended that as the mortgage is good against the mortgagor, it is also good against the assignee for the benefit of creditors; that the latter stand in no better situation than his assignor. The correctness of this position at common law is admitted; but not so under the statute. The mortgagee not having possession of the mortgaged property, the statute declares the mortgage void as

against the creditors of the mortgagor. The assignee took the property under the assignment, and held it for the exclusive benefit of creditors. The mode of providing for creditors by way of assignment, in trust for their benefit, is recognized and regulated by statute; and we see no good reason why their rights may not be as effectually asserted through the assignee as they could be by judgment and execution in case there had been no assignment." In *Pillsbury* v. *Kingon*, 33 N. J. Eq. 287, Mr. Justice Depue considered the leading cases bearing upon the question, and, among other things, said: "No rule of law is better settled than that a conveyance in fraud of creditors is good as between the parties to it. . . . . It is equally clear that such conveyances are also unassailable by those who hold a derivative title from the fraudulent grantor, and in virtue of their title become simply representatives of his interest. . . . . The material question for present consideration is, whether those who hold by a title derived from the grantor, but who in virtue of that title become the representatives of the creditors of the grantor as a class, — as, for instance, the executors or administrators of an insolvent estate, or an assignee for the benefit of the grantor's creditors, — will not be allowed, in the interest of creditors, to have a standing in court, to avoid the fraudulent grants and conveyances of the debtor for the benefit of his creditors. . . . . In none of the cases was the decision placed on any language in the statute specially empowering the assignee to avoid the fraudulent conveyance of the assignor. In fact, neither of those statutes contained any express provision for setting aside conveyances of the assignor in fraud of creditors, and that fact was unsuccessfully pressed upon the attention of the court by the counsel, who argued against the authority of the assignee to exercise that power. The capacity of the assignee to appear in court for that purpose was in express words, or inferentially adjudged on the ground that the assignee of an insolvent was a representative of creditors, and, as such, was entitled to take, for their benefit, the

same advantage of the statute of Elizabeth as the cred-
itors might have taken. . . . . In *Bayard* v. *Hoffman*, 4
Johns. Ch. 430, Chancellor Kent decided that an assign-
ment of all the debtor's estate, real and personal, in
trust for all his creditors, included stock which the
debtor had before that voluntarily assigned, to the in-
jury of his creditors, and that the assignee might file a
bill to set aside the fraudulent transfer for the benefit
of the creditors. . . . . An 'assignment under the act of
the legislature of this state differs in most important
particulars from an assignment made by a debtor at
common law for the benefit of his creditors. Its title
indicates the legislative purpose to establish a system
for securing an equal and just division of the estates of
debtors among their creditors, and that purpose is
clearly evinced by the provisions of the act. At com-
mon law, a debtor might assign the whole or a portion
of his property for the benefit of all or a part of his cred-
itors. By our statute, an assignment under the act
transfers all the property of the assignor, whether it be
described in the inventory or not; . . . . and all prefer-
ences of one creditor over another are forbidden. At
common law, an assignment by a debtor to his trustee to
pay his debts might be rescinded by the mutual consent
of the debtor and the trustee, where the creditors had
not directed the assignment or assented to it, or changed
tLeir situation in consequence of it. A deed of assign-
ment under the statute, executed, delivered, and accepted
by the assignee, creates, *ipso facto*, a trust for the bene-
fit of creditors, not to be surrendered or destroyed except
by their consent, and a court of equity will execute it
by appointing new trustees, if necessary. Under such
an assignment, the trustee at common law was com-
pelled to use the assignor's name in suits to recover
the property, or upon the choses in action assigned.
By the statute the assignee may bring suit in his own
name. . . . . Regarding the substantial nature of the
transaction, the doctrine of the English courts, with
respect to the representative character of the assignee of

an insolvent, may very properly be applied in favor of an assignee under the assignment act, and the latter be regarded as representing creditors so far as to enable him to take proceedings in their behalf to set aside conveyances in fraud of creditors, where such property is needed for the payment of debts. . . . . Nor will any embarrassment be experienced in the fact that the property which has fraudulently been conveyed away may be in excess of what is required for the payment of debts. As is indicated in the opinion of this court in *Miller* v. *Mackenzie*, such fraudulent conveyances will be set aside no further than is necessary for the satisfaction of the demands of creditors, and the surplus, if there be any, will not be restored to the fraudulent debtor, but will be returned to the grantee to whom the fraudulent conveyance was made."

The statutes of New Jersey seem to be identical with our own on this subject. The reporter, in a note added to the report of the case just referred to, has collated a large number of authorities bearing on the subject, and shows that the preponderance of judicial opinion is in favor of the views expressed by the court. There is nothing in *Shaw* v. *Glen*, 37 N. J. Eq. 32, indicating an intention to overrule *Pillsbury* v. *Kingon*, 33 N. J. Eq. 299. On the contrary, the court spoke approvingly of the decision, but distinguished it from the case then under consideration, saying: " But in cases unaffected by fraud, he (the assignee) is bound by the equities to which the property assigned was liable when it came to his hands from his assignor."

Rehearing denied.