[Civ. No. 173.   Third Appellate District.—April 2, 1906.]

## GEORGE S. NIXON, Assignee in Insolvency of MONTAUK CONSOLIDATED GOLD MINING CO., Respondent, v. WILLIAM DALLAS GOODWIN, Appellant.

FRAUDULENT CONVEYANCES—DEED BY INSOLVENT CORPORATION TO RE-
SIGNED DIRECTOR—PREFERENCE—DELAY OF OTHER CREDITORS—AC-
TION BY ASSIGNEE IN INSOLVENCY.—A deed by an insolvent for-
eign mining corporation of all of its mining property in this
state to a creditor who was a director and president of the com-
pany, and who resigned for the purpose of taking such deed to
prefer his debt, with knowledge of its insolvency, and with in-
tent to hinder, delay and defraud other existing creditors of the
corporation, which had no other property with which to pay them,
was void as to such creditors, and as to the assignee in insolvency
of such corporation, by the provisions of section 3439 of the Civil
Code; and such assignee may maintain an action to set the deed
aside as fraudulent, notwithstanding it was executed more than
thirty days before the filing of the petition in insolvency.

ID.—FRAUDULENT INTENT—QUESTION OF FACT—BURDEN OF PROOF
SUSTAINED.—In such a case the question of fraudulent intent is
one of fact and not of law; and the burden of proof is upon the
plaintiff to show that the deed was made for the purpose of hin-
dering, delaying or defrauding creditors, or to prevent them from
receiving their equal *pro rata* on their claims.  *Held,* that, under
the evidence, the burden of proof was sufficiently sustained, and
supported the findings and judgment for the plaintiff.

ID.—FRAUDULENT PREFERENCE OF DIRECTOR AS CREDITOR.—A director
of an insolvent corporation cannot receive to himself any prefer-
ence or advantage over other creditors, in payment of his debt;
and the same rule would apply with equal force to one who is a
large creditor of the corporation of which he is director and the
president, and who resigns to-day that he may to-morrow (secretly
as to all other creditors) accept a conveyance to himself of the
corporation property, to prevent a ratable distribution of the in-
solvent's assets among its creditors.  Such a transfer does not
come within the provisions of section 3452 of the Civil Code
allowing a debtor to prefer one creditor.

ID.—TRUST RELATION OF OFFICERS OF CORPORATION.—The officers of
a corporation occupy a trust relation as to its property; and any
transaction on the part of the directors which is tainted with
fraud is voidable.  A director cannot be permitted to throw off

his trust relation for the purpose of giving himself an advantage over ordinary creditors, that he may take the property which he, as a director, had been holding in trust for all the creditors, and apply it on his own debt to their detriment.

ID.—EVIDENCE—CLAIMS OF CREDITORS PROVED IN INSOLVENCY.—The claims of creditors proved in insolvency, the larger part of which was shown to be due before the date of the deed, were admissible in evidence.

ID.—ACTION FOR DAMAGES—SUBSEQUENT JUDGMENT—HARMLESS RULING.—Where an action for damages against the corporation was pending when the deed was executed, error in admitting in evidence the judgment subsequently rendered was not ground for reversal.

ID.—STRIKING OUT ANSWER NOT RESPONSIVE.—Where an answer to a question was not responsive thereto, it was properly stricken out.

ID.—DEEDS AND MORTGAGES ADMISSIBLE.—A deed made by the defendant of all the property to a bank, which was also a creditor of the insolvent corporation, and a subsequent reconveyance by the bank, and a mortgage taken by it to secure its debt, and another mortgage executed subsequently by defendant to another creditor, were admissible for the plaintiff as tending to show that the original deed to defendant was not made to secure all creditors of the corporation, as claimed by defendant, but was intended to hinder and delay all other creditors thereof.

ID.—HEARSAY EVIDENCE—MEMORANDUM OF CLAIM—HARMLESS ERROR.— Where the amount of the indebtedness was shown by the approved claims in the insolvency proceedings, the admission of hearsay evidence as to the amount of a claim shown by a memorandum of a witness, made at a meeting of creditors, was not ground for reversal.

ID.—ADVICE OF ATTORNEY FOR CREDITOR—OBJECTION NOT TENABLE— HARMLESS RULING.—Where a paper purporting to relate to an agreement concerning the manner of paying debts was shown by a creditor to his attorney, who read it and returned it to the creditor, a question whether he advised the creditor in relation to it is not objectionable on the ground that it called for the opinion of a witness, and for a communication between attorney and client; but, inasmuch as to have answered the question would be of no advantage to the defendant, the ruling sustaining the objection was harmless.

ID.—NOTE NOT EVIDENCE OF INDEBTEDNESS—AUTHORITY OF CORPORATION NOT SHOWN—IMPROPER AFFIDAVIT—ORAL TESTIMONY.— Promissory notes of the corporation to the defendant were not admissible evidence of the indebtedness of the corporation to him, where the minutes of the corporation showing authority therefor, were not produced, and no properly certified copy thereof was of-

fered in evidence. A copy of mere extracts, to which was attached an affidavit of the president that to the best of his knowledge and belief the said extracts are true extracts from the original minutes of several meetings, was not properly certified as required by subdivisions 6 and 7 of section 1918 of the Code of Civil Procedure, and was not admissible in evidence. Oral testimony was not admissible to prove the contents of the minutes.

ID.—CONSIDERATION OF DEED.—Evidence of the consideration of the deed to defendant was not admissible where no record evidence was shown to prove the consideration.

ID.—VALUE OF STOCK HELD BY CORPORATION.—Evidence as to the value of certain stock in another corporation held by the insolvent corporation one year prior to the deed was immaterial.

APPEAL from a judgment of the Superior Court of El Dorado County, and from an order denying a new trial. M. P. Bennett, Judge.

The facts are stated in the opinion of the court.

John M. Fulweiler, for Appellant.

L. T. Hatfield, and Wm. E. Kleinsorge, for Respondent.

BUCKLES, J.—This action was brought to cancel a deed of conveyance executed and delivered to defendant William Dallas Goodwin on April 3, 1901, by Montauk Consolidated Gold Mining Company, a foreign corporation, upon the grounds that it was made with the intent to hinder, delay, and defraud the creditors of said mining corporation, and to prevent the property of said corporation from coming into the hands of its assignee in insolvency, and to evade the provisions of the insolvent act of 1895. Defendant interposed a demurrer to the complaint on all the statutory grounds. The appeal is from the judgment in favor of plaintiff and from an order denying defendant's motion for a new trial.

The court found that the Montauk Consolidated Gold Mining Company was insolvent on April 3, 1901, and that defendant knew of said insolvency; that defendant was a stockholder in said corporation and a member of the board of directors thereof until sometime between the 1st and 3d of April, 1901, when he resigned as director and president for the purpose of having the said deed made to him; that on

April 3, 1901, said mining corporation executed to defendant the deed in controversy for the purpose of placing the property of said corporation beyond the reach of the creditors of said corporation, and to hinder, delay, and defraud said creditors; and that said defendant had full knowledge that said deed was without valuable consideration and was for the purpose and with the intent to hinder, delay, and defraud said creditors, and to prevent the property of said corporation from being distributed ratably among its creditors. The demurrer alleged, among other things, that plaintiff had no capacity to sue to set aside said deed, and that only the creditors could do so, because the said deed was executed, delivered, and recorded more than thirty days before the filing of the petition in insolvency against the Montauk Consolidated Gold Mining Company; and the appellant insists on this idea in his brief and cites in support thereof *Francisco* v. *Aguirre,* 94 Cal. 180, [29 Pac. 495], and *Babcock* v. *Chase,* 111 Cal. 351, [43 Pac. 1105]. But neither of these cases seems to furnish any authority for appellant's contention. In *Francisco* v. *Aguirre* the question was over the delivery of the furniture in a lodging-house. In *Babcock* v. *Chase* the deed was made five years prior to the adjudication in insolvency, and at a time when the insolvent, Wilson, is not alleged to have had any creditors. The deed was made to Burtch on a consideration of $5, and it is further alleged that Burtch subsequently conveyed to Martenstein and Chase for a like expressed consideration, but that there was no real consideration in either transaction, and that it was all at the request of Wilson, that the land might be held for his benefit. The court held: "Upon the allegations of this complaint these deeds cannot be successfully attacked by the grantor, Wilson, or his assignee in insolvency. No express trust is charged, and there is nothing recited in the pleading that would authorize the introduction of evidence to establish a trust in parol." But in the case at bar the complaint alleges the insolvency of the mining company at the time it made the deed, and in the second count alleges the deed to have been made for the benefit of all the creditors, but was not accepted by the creditors, and that such assignment, transfer, and conveyance to defendant tended to coerce the creditors of the said mining company to compromise or release their demands. In *Salisbury* v. *Burr,* 114 Cal. 451, [46 Pac. 270], the court

held that under section 3439 of the Civil Code every transfer of property made with intent to delay or defraud any creditor or other person of his demands is void against all creditors, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor. It is further said: "This broad provision renders it void, at the instance of creditors or of the assignee in insolvency." And we think this must be so, without reference to whether the deed was made within thirty days of the time of filing the petition in insolvency, providing that there were creditors at the time and not sufficient other property with which to pay them, as in the case at bar, and the attempted transfer was made with intent to hinder, delay or defraud the creditors. This settles the right under the pleadings in this case of the assignee in insolvency to bring the action to set aside the deed made as here alleged. The demurrer was properly overruled.

The said deed was made April 3, 1901, and the petition in insolvency was filed June 6, 1901, and appellant contends that, the deed not having been made within thirty days before the insolvency proceedings were instituted, the conveyance was not a prohibited or void one under the insolvent act of 1895, and that there is no evidence to support finding 6 that the said mining company, "acting in concert with said defendant and for the purpose of hindering, delaying, and defrauding its creditors, and to prevent its property from being distributed ratably among its creditors, executed to defendant the deed, a true copy of which is set out in the complaint," and other matters in said finding. In a case like the one at bar the question of fraudulent intent is one of fact, and not of law; and while a transfer or change cannot be said to be fraudulent merely on the ground that it was made without valuable consideration, yet if any transfer or encumbrance of property be made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, the same shall be fraudulent and void as to existing creditors. (Section 3442, Civil Code.) The burden of proof is upon the plaintiff to show that the said deed was made for the purpose of hindering, delaying, or defrauding the creditors, or to prevent them from receiving an equal pro rata on their claims. At the time this deed was made, April 3, 1901, the defendant knew the insolvent con-

dition of said mining company. He was a stockholder, owning one-third of all the shares of said mining company, and up to the very day before the said deed was made he was a director and the president thereof, and the evidence shows he resigned both positions April 2, 1901, so that this deed might be made to him, and the deed was made the next day. He was the largest creditor, and there was no consideration paid for the deed, other than the debt of $44,000 the said mining company owed him. Both appellant and the mining company sought to keep the transfer a secret, because they feared the creditors whose claims they could not meet, and that if the transfer was made public it would cause trouble with the labor at the mine. The appellant did not testify. But at a meeting held with some of the creditors a month after the deed was made he then for the first time informed them all the property of the mining company had been deeded to him for the purpose of having him take care of all the creditors, with the understanding that all the creditors should be protected and paid before he would collect his own indebtedness. But on April 17th appellant made a deed of conveyance of all the property to the Placer County Bank, being a creditor of said mining company to the amount of $13,106.84. The said bank subsequently made a reconveyance to appellant, and he then gave it a mortgage on the same property to secure the indebtedness. The other creditors knew nothing of the deed to appellant, nor of the transaction with the Placer County Bank, and in no way ratified the deed from the mining company to appellant. Nothing whatever is said in the said deed to indicate that it was made for any purpose other than for the sole benefit of appellant. The rule is that a director of an insolvent corporation cannot receive to himself any preference or advantage over other creditors in the payment of his debt (*Bonney* v. *Tilley,* 109 Cal. 346, [42 Pac. 439]) ; and surely the same rule would apply with equal force to one who is a large creditor of the corporation of which he is a director and the president, and who resigns to-day that he may to-morrow (secretly as to all other creditors) accept a conveyance to himself of the corporation's property.

Nor would such be a transfer coming under the provisions of section 3452 of the Civil Code, where a debtor may pay one creditor in preference to another, or may give to one creditor security for the payment of his demand in preference to

another, because such action, when taken by a director, or one so lately holding that relation, would be taking an unfair as well as unlawful advantage of other creditors, and would be an attempt pure and simple to prevent a ratable distribution of the insolvent's assets among his creditors. The defendant does not stand as an ordinary common creditor; for, notwithstanding his resignation as director and president for the purposes for which tendered, he cannot escape the conclusion inevitably to be reached that he stands still in the same light the law views a director of a corporation when it forbids him making himself a preferred creditor, and any attempt at so doing, in our opinion, would subject him and his acts to the same prohibition as though he were still a director. A man cannot be permitted to so easily throw off his trust relations, and, as here, for the purpose of giving him an advantage over ordinary creditors, that he may take the property which he as a director had been holding in trust for all the creditors and apply it on his own debt to their detriment. Under the circumstances in this case, that all the debts, or nearly so, owing by the corporation were contracted while defendant was a director and presumably contracted at his instance and request, as he was president, it seems to us the deed made to him on April 3d, the day after he had resigned, was just as fraudulent and void as if it had been made April 1st, and while he was yet a director. Could he thus devest himself of his trust relations, so that he might make legal the act which the law declares illegal while a director? I think not, for the same undue advantage which the law prohibits is still exercised. A director of a corporation may advance money to it, may become its creditor, may take from it a mortgage or any other security, and may enforce the same like any other creditor, but always subject to severe scrutiny and under the obligations of acting in the utmost good faith. (Taylor on Corporations, 634.) Goodwin while a director could loan money to his corporation, and when such corporation had the use of his money is bound to repay him, and as long as the matter remained a question between Goodwin and the mining company he could enforce collection even while he remained a director. (*Schnittger* v. *Old Home Consolidated Min. Co.,* 144 Cal. 603, [78 Pac. 9].) In this case just cited the rights of the other creditors were not involved. The officers of a corporation hold its property in trust for its stockholders.

and incidentally for the creditors, and any transaction on the part of the directors which is tainted with fraud or in violation of the duties of their trust is voidable. (*Snediker* v. *Ayers*, 146 Cal. 407, [80 Pac. 511].)

The claim of the appellant that all the evidence in the case tends to show that the deed was made for the sole purpose of enabling him to protect and pay all the debts of the mining company does not seem to be sustained; but, on the contrary, we think it very clearly appears from all the evidence that appellant took the deed for the sole purpose of protecting and paying his own debt. It is true that after the creditors became aware of the deed and were clamoring for an adjustment of the indebtedness, and not until July 16th, more than three months after he took the deed, appellant did make an effort to settle with the creditors by having the net proceeds arising from the working of the mine and a certain first payment on a contemplated sale of the mine, paid into the Placer County Bank in the name of some one as trustee in trust for the creditors. But under the circumstances above detailed it cannot be said that this is any evidence tending to show that the deed was made for the benefit of all the creditors, and there is no evidence in the case indicating that the said mining company made the deed in question to appellant for any purpose other than to prefer him as a creditor; and if for that purpose the deed cannot stand, under the doctrine that a director cannot use up the property of his corporation to pay his debt to the disadvantage of the other creditors. It is true there is testimony indicating appellant offered to give the creditors a second mortgage on the property described in the deed in question. It is true one or two of the witnesses had heard appellant say the deed was made for the benefit of all the creditors; but when the appellant absents himself from the trial, and does not testify in the case, this evidence, weak as it is in the first place, is entitled to no weight at all. For the purpose of properly determining the question here involved it seems to me that it is immaterial whether the evidence shows that the deed was authorized or ratified by two-thirds of the stockholders, for appellant was a stockholder and president when the determination was reached to convey all the property of the mining company to him. How could he have resigned for the purpose of accepting this attempted conveyance, if not a director at the time the transfer was

determined upon? The meetings of the stockholders and board of directors were held in New York on April 2 and April 3, 1901, and it was then the transfer was determined upon.

Assignments of error at the trial: The petition of involuntary insolvency was filed June 6, 1901. The plaintiff produced and offered in evidence, and they were admitted over defendant's objection, creditors' claims which had been presented and approved in the said insolvency proceedings. The objection to these claims is based upon the affidavits attached thereto which fails to show that the debt represented therein was contracted prior to April 3, 1901. The claim of Mebius, Drescher & Co. for $5,149.81 was the first one offered. The testimony of P. C. Drescher shows that $5,044.81 of this claim was due April 3, 1901. There were twenty-four of these claims. There is no evidence as to the contents or items of these claims, further than the testimony of Drescher, Curtis, and Shaw, and this shows that at least the larger amount of their claims accrued prior to April 3, 1901. The bill of exceptions admits that all these twenty-four claims were the same in substance as to when the debt was due and owing, and as to allowance and filing and other matters, except amounts, as that of Mebius, Drescher & Co. This being so, and $5,089.81 of this claim having accrued prior to April 3, 1901, the objection of appellant is not well taken. This disposes of twenty-four of his exceptions.

The twenty-fifth, twenty-sixth, and twenty-seventh specifications of error were to the admission of the judgment-roll in the case of *John Dias* v. *Montauk Consolidated Gold Mining Company,* a copy of the execution, and the original execution. The action was for personal damages. The judgment not having been recovered until June 5, 1901, the objection should have been sustained; but appellant could not have been injured by the introduction of this judgment-roll. There was, therefore, no reversible error.

The witness Coles on redirect examination was asked whether the money gotten from the Placer County Bank was given to appellant for any of his individual accounts, and answered: "No, sir; not a dollar. Well, I can take a different view. It was all Mr. Goodwin's, because when I went to the bank and filed the security the bank gave me a line of

credit, allowed us to increase our overdraft to $15,000.'' Plaintiff moved to strike out this last answer, and the motion was granted. The answer was not responsive and was properly stricken out.

The introduction of the deed, the mortgage, and the deed of reconveyance, in the transaction appellant had with the Placer County Bank is assigned as error. This whole transaction had a tendency to show that the deed in controversy was not made for the benefit of the creditors as claimed by the grantee. The transfer of the property mentioned in this deed by the corporation to appellant must be judged by the terms of the deed and in the light of the contemporaneous and subsequent acts of the parties. These furnish the data for the determination of the intent and motives with which it was made. (Bump on Fraudulent Conveyances, sec. 601.) The acts of the appellant in attempting to prefer the Placer County Bank, shown by his transferring the property to a creditor and his subsequent mortgaging it to secure such creditor's debt, all have a tendency to show that he was not acting in good faith when he says this deed was made to enable him to take care of all the creditors of the mining company and pay all their claims, and a tendency to show, further, that the deed was not made for the benefit of all the creditors, but for the purpose to hinder, delay, and defraud such creditors. For this purpose the transaction with the Bank of Placer County was a legitimate inquiry, and therefore the deed, the mortgage, and the deed of reconveyance were properly admitted.

The claim of Baker & Hamilton offered in evidence by plaintiff was objected to on the same grounds as the other claims which had been proven in the insolvency proceedings, and, we think, rightfully admitted. Objection was made to the testimony showing the amount of the debt due Mebius, Drescher & Co. Drescher was asked to state the amount of their claim, and answered, ''$5,044.89.'' The objection was upon the ground that this was not the best evidence. He was simply asked the amount of his firm's claim, nothing more, and the question and answer were not subject to the objection made. Objection was made to the introduction of the amount of indebtedness shown by a memorandum made by the witness Kleinsorge at a meeting of creditors in May. This was

error, as being hearsay, but was not reversible error, inasmuch as the amount of the indebtedness was shown by the approved claims in the insolvency proceedings.

Plaintiff offered in evidence a mortgage on the property included in the deed in controversy to L. L. Chamberlain June, 1901, to secure the payment of a promissory note of $3,692 given by defendant. Defendant objected on the ground the said mortgage was immaterial, irrelevant and incompetent. The objection was overruled and the mortgage admitted. The mortgage was material as tending to show that said deed was not made for the benefit of the creditors of the said corporation, but rather to hinder and delay them.

The witness Kleinsorge was asked about written instrument Defendant's Exhibit 2 for identification which had been presented to him at one time purporting to be an agreement whereby appellant agreed to sell to D. H. Coles and Dwight Treadway the property of the mining company upon certain conditions; said he did not remember when he received it. "I received it from Mr. Drescher, and I read it" and returned it to him. He was then asked by appellant: "Q. Did you advise him in relation to it?" The plaintiff objected on the ground that the question called "for the opinion of the witness and also for a communication between attorney and client. It is calling for his opinion as an attorney." The question was not objectionable upon the ground stated. Kleinsorge was the attorney for Drescher and other creditors, and this paper purported to relate to an agreement concerning the manner of paying the debts, and was no doubt presented to him for his advice by his client. To have answered whether or not he advised Mr. Drescher in relation would not have been any advantage to the defendant, for he would probably not have given any information as to what advice he gave, if any. Sustaining the objection was not reversible error.

Defendant offered in evidence ten promissory notes, of different dates and amounts, but aggregating $33,850, purporting to be notes given by the said mining company to appellant, and all, with the exception of the one for $5,000 due May 15, 1899, were shown by indorsements thereon to have been paid. Plaintiff objected to their introduction, on the ground that they were irrelevant, incompetent, and immaterial, and no authority having been shown to authorize the exe-

cution of the same, and the court properly sustained the objection. These notes could not have been material to show indebtedness due from the said mining company to appellant unless their issue and execution were authorized by the board of directors, and there was no evidence of such authorization. The defendant did offer in evidence a paper purporting to contain extracts from the minutes of meetings of the board of directors wherein at least some of the said promissory notes appeared to have been authorized by the board and containing authorizations to borrow money. The minute-book was not produced. And to this there was attached the affidavit of George C. Wilde under date of March 24, 1904, setting forth that he was the president of the Montauk Consolidated Gold Mining Company, and to the best of his knowledge and belief the said extracts are true extracts from the original minutes of the several meetings. But this instrument was not admissible as evidence, because not properly certified. (Code Civ. Proc., sec. 1918, subds. 6, 7.)

Witness D. H. Coles, secretary of the said mining company, was asked by appellant in relation to the money the mining corporation had borrowed of appellant, testified the books he had in his hands were the original cash-book and ledger of the corporation, and that prior to April, 1901, the corporation had borrowed money of appellant, and that he could tell from the books when the first loan was made. He kept the books and had made the original entries. He was asked: ''What was the first money that was borrowed from William Dallas Goodwin? Does the book show that?'' Plaintiff objected, because ''premature, no foundation laid to show that anybody had any authority to borrow any money, and immaterial, and so forth.'' If it be conceded that the question was a material one, because the appellant had a right to show the corporation's indebtedness to him as tending to support his theory of the transfer to him of the corporation assets, still we think it necessary to first show the authorization of the corporation to borrow this money. This had not been shown, and therefore the objection was properly sustained. Coles was further asked if any other sums were borrowed from Goodwin for which no note was given, and the court sustained plaintiff's objection thereto, on the ground that, if there was money borrowed, it must have been a transaction by the board of direc-

tors, and a record made of it, such record constituting the best evidence. There was no such record presented and its absence was not accounted for. Coles further testified that he was the Coles mentioned in the paper offered purporting to be extracts from the minutes of the board of directors, and that he was the only Coles connected with this company, and was a director. He was then asked: "Who else was present besides you at the meeting of the board of directors" (referring to the meeting of September 9, 1898)? The question should have been answered; but, as it now appears that defendant did not offer in a legal way to show what took place at that meeting, the question as to who was present becomes immaterial. Further testifying, Coles said that in April, 1899, the said mining company borrowed of said Goodwin $10,000, and on October 17, 1899, the further sum of $5,000. He was then asked: "Was or was not that the money of William Dallas Goodwin?" And answered: "It was." The answer was stricken out on plaintiff's motion on the ground that the witness did not know the source of production of the money. The ruling was correct; but at the same time the witness had just testified, without objection or motion to strike out, that he knew the money the company received from Goodwin belonged to him and his wife. Coles testified he was present at the meeting of the directors and stockholders in New York April 3, 1901, when the deed in question was made by the corporation to the appellant. He was then asked by the defendant: "State, if you please, the consideration of that deed." Plaintiff objected to the question on the ground that it was immaterial as to what the consideration was because the records must show a valid transaction, and, further, that the deed was not assented to by the proper quantity of stock. The minutes of the board of directors of that meeting were not produced, and not even an extract of the minutes of that meeting was offered. That was a very important meeting and lasted two days. The president resigned and a new one was elected. Appellant was present, and the minutes, if properly kept, disclosed the action taken by him. Whatever may have been the reason for omitting the introduction of the minutes of that meeting, its proper recitals could not be proved by an oral statement. If there was any consideration for this deed, defendant could have shown it in the proper

way. Coles had testified that on April 3, 1901, the said min-
ing corporation owned sixty thousand shares of the capital
stock of the Ribbon Gold Mining Company, par value, but
did not know its value since about one year before April 3,
1901, when defendant asked him, "What was the value of
the stock one year prior to April 3, 1901?" And again,
"What was the value of this stock prior to April 3, 1901?"
Plaintiff interposed the objection to both of these questions,
and the court sustained the same. In the first place, it was
not material as to what the stock was worth one year before
the deed was made, and in the second question there was but
a repetition of the first, for any answer the witness could have
given would have been as to the value one year prior to April
3, 1901.

There were twenty-four assignments of error as to the ad-
mission of testimony, and, having carefully considered each
one, we do not find any reversible error therein. We think
the evidence sufficient to uphold every material finding, and
that the judgment is amply supported by the findings.

The judgment is affirmed.

Chipman, P. J., and McLaughlin, J., concurred.