[Civ. No. 2118. Third Appellate District.—March 12, 1920.]

## SOUTHERN CALIFORNIA HARDWOOD AND MANUFACTURING COMPANY (a Corporation), Respondent, v. LAURA E. BORTON et al., Appellants.

[1] SALES—INSTALLATION OF WALL BEDS—RESERVATION OF TITLE.—In this action to recover possession of certain wall beds installed by plaintiff, the contract between it and the purchasers was one of conditional sale of the property, under which the title did not pass and could not pass until full payment was made.

[2] ID.—PROPERTY AFFIXED TO LAND—RIGHT TO REMOVE.—When a person affixes his property to the land of another with an agreement permitting him to remove it, the thing affixed does not belong to the owner of the land.

[3] ID.—ASSIGNMENT FOR BENEFIT OF CREDITORS—RIGHT OF ASSIGNEE. Where wall beds are installed in a building under an agreement that the title thereto is not to pass until they are fully paid for, and thereafter, but before such beds are paid for, the owners of the building make an assignment of the property, including the beds, for the benefit of creditors with the distinct agreement that, after selling the property, whatever excess there might be is to be paid to them, such assignee acquires no greater rights in the property than the owners would have had had such conveyance not been made.

[4] ID.—INSTALLATION OF WALL BEDS—REMOVAL WITHOUT INJURY TO BUILDING—NATURE OF.—Where wall beds are installed in a building in such a manner that they can be taken out without unscrewing any screws or removing any fixtures and the house will remain habitable as before, except that it will not be furnished with beds, such wall beds are not fixtures but are a part of the furniture of the house, not essentially different from beds of any other description. (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Los Angeles County. Fred H. Taft, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. M. Hurd and R. L. Horton for Appellants.

---

3. Rights of seller of fixtures retaining title thereto, or a lien thereon, as against purchasers or encumbrancers of the realty, note, 13 A. L. R. 448.

Arthur Wright for Respondent.

ELLISON, P. J., *pro tem.*—On the twenty-second day of January, 1917, defendant Laura E. Borton was building a house upon a described lot in the city of Los Angeles. At the same time the plaintiff was the manufacturer for sale of various kinds and classes of wall beds. The defendant Laura E, Borton, being desirous of having installed in the house that she was building, certain wall beds that were being manufactured and sold by the plaintiff, entered into a written contract with it in and by which it agreed to and did install in said house seventy-seven Murphy beds. The agreement is a long one, and it will not be necessary for the decision of the case to set it out in full. The following quotations from it are deemed sufficient for a determination of the controversy. After reciting that Laura E. Borton desired to purchase from the plaintiff the wall beds, but was unable to pay for them at that time, it proceeds:

"Whereas, both parties are agreeable that the seller deliver to the proposed purchaser the said wall beds with the understanding that the sale is not complete until the beds are paid for in full, in cash, and with the further specific understanding that until they are so paid for in actual cash, they shall remain the property of the seller"; the seller promises to install the said beds in a building to be erected by the purchaser upon certain real estate in Los Angeles, describing it, and then it is said: "It is agreed the proposed purchaser shall pay to the seller the sum of $2184.00, payable as follows: $873.69 when beds are delivered and installed, and $1310.40 in sixty days thereafter." Proceeding, the agreement says: "This agreement is made with the specific following understandings which are the material inducements leading the seller to accept the same and to deliver and install said beds for the proposed purchaser without payment in advance. That the title to said bed and each and every one of them, shall remain in the said Southern California Hardwood & Manufacturing Company until the said full purchase price is paid in cash." It also provided: "Should any installment of the purchase price not be paid when due, then the whole of said purchase price unpaid shall become immediately due and payable at seller's option. If the proposed purchaser fails to pay any installment of

the said purchase price, or upon any other default here-under or breach hereof on the part of the proposed purchaser, the seller shall have the right of recaption and may, without let or hindrance, retake said beds into its own possession to be its own property, and for that purpose it shall have the privilege and right to enter said building and detach and remove said beds and carry them away as its own property.''

It is further provided: ''Upon payment of full purchase price as herein called for, the seller shall execute and deliver to the proposed purchaser a bill of sale transferring title from the seller to the proposed purchaser. . . .

''The failure of the seller to exercise its right of recaption at any time it may have the right to do so herein, shall not be a waiver of its said right, and at any time thereafter it may so exercise its right of recaption without demand or notice.''

The defendant Laura E. Borton, having made default in the payment of the installments due, as provided by said contract, the plaintiff, after demand for the money due and demand for the possession of the property, brought this action to recover possession thereof. One C. C. Hurd filed a complaint in intervention in said action, claiming that he was the owner of all of said beds. His right of ownership was based upon the fact that on September 29, 1917, the defendant Laura E. Borton and her husband had executed and delivered to him a grant deed to the real estate upon which said building was located; that said seventy-seven wall beds were, as claimed by him, a part of the realty and attached to and made a part of said building; and that by virtue of said deed he became and is the owner of all of said wall beds.

After trial, the court filed its findings and conclusions of law, finding that the plaintiff was the owner of all of said beds, and had the right to the possession thereof, and that neither the defendant Borton nor the intervener Hurd had any right to retain the possession thereof. It made a lengthy finding, which is numbered finding 7, describing said wall beds in detail, the manner in which they were installed in the house, their manner of operation, and to what extent, if any, they were attached to the building, and closed said finding with this: ''The court finds that the beds described in the complaint were not at any time attached permanently

to the building nor did they become, nor are they now, a part of the building. The court finds that the beds in this case are personal, movable property.''

The court also made this finding: ''That said real estate and building were conveyed to the said intervener with the understanding and knowledge that he represented certain of the creditors of the defendants, and was with the agreement that the said intervener was to retain the legal title to said property, operate the same, and sell the same, and if there was any excess above certain obligations due to said creditors, that such excess would be paid over to the defendants,'' and entered judgment for plaintiff for the possession of the beds or their value. The defendants and the intervener appeal from the judgment.

[1] The intervener claims that the contract entered into between the plaintiff and Mrs. Borton in reference to the wall beds was not a conditional sale contract, but was a present sale of the property from the plaintiff to her. We are unable to accede to this claim. The contract between them seems to have been drawn with consummate skill, and a reading of it leads to the conclusion beyond question that no title passed or could pass from the plaintiff to the property until it was fully paid for. This is stated emphatically in numerous parts of the lengthy contract with clearness and emphasis. We deem it unnecessary to enter into an elaborate discussion of its terms, nor to cite authorities, because the matter seems to us very clear that the contract was simply one of conditional sale of the property, and that the title did not pass and could not until until full payment was made.

The briefs of counsel on both sides contain very able and illuminating discussions of when personal property becomes so much attached to real estate as to become a part thereof and be immovable. In the view we take of the case it will be unnecessary to follow this argument, or to determine whether the finding of the court that the beds, as installed in the house, were personal property is sustained by the evidence. Whether they were personal property, or became a part of the realty, under the contract between plaintiff and Mrs. Borton, the plaintiff, upon nonpayment of the installments as they became due, had the right to remove them from the house.

Section 1013 of the Civil Code provides: "When a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as provided in section ten hundred and nineteen, belongs to the owner of the land, unless he chooses to require the former to remove it." [2] The converse of this is equally true that when a person affixes his property to the land of another with an agreement permitting him to remove it, the thing affixed does not belong to the owner of the land. So, by virtue of the contract between the plaintiff and Mrs. Borton, giving it the right to remove these beds unless they were paid for, the plaintiff, as between it and said defendants, was acting within the terms of the written contract in attempting to remove the beds, and if they were the only parties interested in this case it would have the clear right to the judgment, as given by the court, to the possession of the beds or their value. This point is clear, and it seems to us to be indisputable. [3] We think it equally clear that the intervener has no defense to this action brought by the plaintiff for the possession of the property. It is to be observed that the finding of the court above quoted, to the effect that the real estate was conveyed to the intervener with the understanding that he represented certain of the creditors of the defendant, and with the agreement that he was to retain the title to the property, sell the same, and if there was any excess above certain obligations due to said creditors, that such excess would be paid to the defendant, is fully sustained by the evidence. In fact, the finding is almost a repetition in narrative form of the testimony of the intervener himself. The situation then is that, while holding the legal title, he is the voluntary assignee of the defendants to the property, including the beds, for the benefit of their creditors, with the distinct agreement that, after selling the property, whatever excess there might be is by him to be paid over to them. This being his relation to the property, he has no greater rights therein than his grantors would have had had such conveyance not been made. This principle of law is very clearly enunciated in the case of *Francisco* v. *Aguirre,* 94 Cal., at page 180, [29 Pac. 495]. In that case it appeared that one Mrs. Edmondston, being the owner of certain furniture, executed a bill of sale thereof to Martha O'Hara, but did not deliver possession. There-

after Mrs. O'Hara made a demand on her for the possession of the furniture, and being refused such possession, she began an action of claim and delivery therefor. At the time of the making of the bill of sale to Mrs. O'Hara, Mrs. Edmondston was indebted to various parties, and on the morning of February 2d made an assignment to the plaintiff for the benefit of creditors. Mrs. O'Hara brought a replevin suit against Mrs. Edmondston to recover the property, and the sheriff took possession of it. The plaintiff then, as assignee of Mrs. Edmondston, and representing her creditors, sued the sheriff and Mrs. O'Hara for the property, claiming that he had right to it on the ground that the sale to Mrs. O'Hara as against the creditors of Mrs. Edmondston was void for want of delivery and possession. The court, in commenting upon this situation, said: "Upon the execution of the bill of sale to Mrs. O'Hara, the title to the property therein vested in her; and, although, without an actual delivery and a continued change of possession, such title could not be asserted by her against the creditors of her vendor, yet, as between the parties to the instrument, she could at any time maintain an action to recover the possession from her vendor, irrespective of such nondelivery. The plaintiff, as the voluntary assignee of Mrs. Edmondston, acquired no greater right in the property than she had at the time of the assignment.

"Upon the principle that an assignor cannot confer upon his assignee any greater right than he himself had in the property, it is held, in an almost unbroken line of authorities, that, in the absence of any statute giving such power, the assignee cannot maintain an action to recover property that had been conveyed by his assignor in fraud of his creditors. This rule rests upon the ground that the assignee is merely the representative of his assignor, and does not represent the creditors.

"Under the common law of assignments, the assignee stands in the place of the assignor, and can assert no claim to property which the assignor might not. The assignment, therefore, does not carry with it to the trustee the title to property which the assignor had previously transferred in fraud of his creditors, for the purpose of hindering, delaying, and defrauding them. (See, also, *Ruggles* v. *Cannedy,* 127 Cal. 305, [46 L. R. A. 371, 53 Pac. 911,

46 Cal. App.—34

59 Pac. 827]; *First Nat. Bank* v. *Menke,* 128 Cal. 105, [60 Pac. 675]; *Babcock* v. *Chase,* 111 Cal. 351, [43 Pac. 1105].)

The intervener, as the voluntary assignee of the defendant Mrs. Borton to the property, to be sold by him for the benefit of her creditors, the balance to be paid over to her, has no greater rights to this property than she had at the date of this assignment, and is not a purchaser for value. As the defendant Mrs. Borton has no legal right, by virtue of the terms of her contract, she having defaulted in the payment, to withhold possession of the property from the plaintiff, neither has the intervener, under the circumstances, and the judgment of the court—regardless of whether the property continued to be personal property, or was so affixed to the building as to become a part thereof—awarding the possession thereof to the plaintiff, is in harmony with the findings and the law applicable thereto.

The appellant raises the point that, because the plaintiff did not exercise its right to take possession of the property immediately upon default in the payment thereof, that it is estopped from exercising such right, especially against the intervener in this case, but this suggestion is fully answered by the provisions of the contract itself, above quoted, wherein it is provided: ''The failure of the seller to exercise its right of recaption at any time it may have the right to do so herein, shall not be a waiver of its said right, and at any time thereafter it may so exercise its right of recaption without demand or notice.''

We think the judgment is in accordance with the law and the facts, and the same is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 10, 1920, and the following opinion then rendered thereon:

THE COURT.—The petition for a rehearing is denied.

In order that the effect of the decision may not be misunderstood we deem it necessary to add some details not given in the opinion of the district court. [4] In the house in question certain fixtures were attached to the closet doors and to the floors of the closets in the rooms in which

the beds in question were installed, by means of which the beds, which were the subject in controversy in the action, could be placed in the closet and hooked on to the aforesaid fixtures. The effect was that when the closet door was opened the bed would swing around into the room, whereupon, by letting it down upon the floor, it was ready for use. The beds were not built in the wall with the house nor were they a necessary part of the house itself. They could be taken out without unscrewing any screws or removing any fixtures and the house would remain habitable as before, except that it was not furnished with beds. It is obvious, therefore, that they were not affixed to the building in the ordinary sense of the word so as to become a part of the realty as between the person who sold the same, retaining title in himself, and a subsequent purchaser of the house without notice of such reserved title. These beds were not fixtures but were a part of the furniture of the house, not essentially different from beds of any other description. So far as the opinion of the district court places the affirmance upon the proposition that the plaintiff would have effectually retained title to the property as against the defendants, even if the beds had been built in or permanently affixed to the house, we are of the opinion that the question was not involved in the case and was unnecessary to the decision, and we withhold approval of the expressions therein to that effect.

All the Justices concurred.