[Civ. No. 4481. Third Appellate District.—January 16, 1932.]

A. L. FRICK et al., Respondents, v. FRIGIDAIRE COR-
PORATION (a Corporation), Appellant.

Geo. L. Keefer for Appellant.

Edgar L. Martin for Respondents.

PLUMMER, J.—In this action the plaintiffs filed a com-
plaint seeking an order of the trial court restraining and
enjoining the defendant from removing certain frigidaire

equipment appliances incorporated as fixtures into a three-story apartment house erected for them under and by virtue of a contract hereinafter referred to.

The defendant, in addition to answering the plaintiffs' complaint, filed a cross-complaint in detinue seeking recovery of the property referred to, under a conditional contract of sale entered into with the contractor who erected the apartment house for the plaintiffs. To this cross-complaint the plaintiffs answered, setting up want of knowledge of the existence of any such contract; also the fact that the frigidaire appliances and equipment pertaining thereto had been incorporated into, and become a part of the realty of the apartment house. The plaintiffs had judgment upon their complaint, and also upon their answer to the defendant's cross-complaint.

While the record shows, we think, sufficient grounds for the interposition of equity in this case, by reason of the damage that would result to the building by the removal of the frigidaire equipment referred to, and the trespasses that were threatened as against the different apartments occupied by tenants, it is really immaterial whether an injunction would lie, by reason of the fact that the defendant, by its cross-complaint, tendered the right to the defendant to remove the frigidaire equipment from the premises, which constituted the real issue decided in this action.

The record shows, and the court found that the plaintiffs were the owners of the premises described in the complaint, as tenants in common; that on or about the eighth day of March, 1927, the plaintiffs entered into a written contract with one W. R. McKenzie, whereby the said McKenzie contracted with the plaintiffs to build for them a three-story frame and stucco apartment house upon real property belonging to the plaintiffs, for the sum of $62,000, and that the contract, among other things, provided that said contractor should furnish and install, in and as a part of said apartment house building, and included in the above price, a complete frigidaire equipment; that in pursuance of said contract the said McKenzie proceeded with, and did construct the apartment house building and install therein a complete frigidaire equipment sufficient to serve thirty-one apartments in the building referred to.

The court further found that in pursuance of the contract, and at the time, as provided by the codes, the plaintiffs gave notice of the completion of the building, in the manner provided by law; that the defendant did not, at any time, file any mechanic's lien against the premises referred to.

The court further found that the frigidaire equipment was installed and attached to the real property, and that said frigidaire equipment, and every part thereof, was securely fastened and attached to said real property by many bolts, screws and nuts; that about 300 feet of the tubing and conduits forming a necessary and integral part of said equipment was interwoven in the walls of said building during the course of construction, and lathing and plastering have been placed over the whole thereof.

The court further found that the defendant sold said frigidaire equipment with knowledge that it was to enter into and become a part of said building; that all of said frigidaire equipment was placed on, and built into and attached to the real property, by the contractor McKenzie, and by the defendant Frigidaire Corporation, with the intent that it should,. and would be and become a permanent part of the realty.

The court further found that the plaintiffs had no knowledge of the conditional contract of sale existing between the defendant and the contractor McKenzie, and had no knowledge of any reservation of title in the' defendant, of said equipment, or any part thereof.

The court further found that the defendant had knowledge of the contract under which McKenzie was erecting the apartment house, and that the contract called for the installation of the frigidaire equipment, to be incorporated therein as a part and parcel of the realty.

The record shows that the plaintiff A. L. Frick, died after the beginning of this action and before the trial, and that the cause was carried on by the plaintiff Mattie J. Frick.

The court also found that the full contract price of $62,000 was paid by the plaintiffs to the contractor McKenzie without any information or knowledge of the conditional contract existing between the contractor and the defendant. No question is made as to the payments to the contractor not having been according to the contract,

and notice of the completion of the building having been given as required by law.

While the court found that the contract entered into between McKenzie and the defendant provided that title to the property should remain in the Frigidaire Corporation until the purchase price thereof was fully paid, by reason of what has just been stated it is unnecessary to consider the terms of the conditional contract of sale.

The first point made by the appellant for reversal is that the contract for the erection of the building was entered into by A. L. Frick the husband of the plaintiff Mattie J. Frick. The husband having by law control of the common property, we think this contention without merit.

The main contention of the appellant is that the testimony is insufficient to support the finding of the court that the property referred to was installed in such a manner as to become a part and parcel of the realty. A short *résumé* of the testimony, however, is sufficient to show lack of merit in this contention. (We quote from the testimony of defendant's witness Salmon): "Q. Was the frigidaire installed during the construction of the building? A. On the installation of the frigidaire it is installed with three separate parts, three separate times; a first part goes in one time and a second part of the installation next, and then the completion, at the completion of the building. Q. You started in to install it during the construction of the building? A. We started in to install it during the construction of the building. Q. Before it was completed? A. Before it was completed. Q. Early in the construction? A. Early in the construction. A. What is put in first? A. The conduit is put in first. Q. Is it a separate unit? A. It is a distinct unit in itself. Q. After the conduit is put in what is the next step in installing the frigidaire equipment? A. It is the installation of the coils of the compressor and the drawing of the tubing and connecting coils and compressor. Q. The tubing you refer to, your main line of tubing; where does the main line of tubing go? A. It goes down through the wall. Q. Where to? A. To under the house. Q. Through the conduit? A. Through the conduits in the wall. Q. It then goes where? Under the house? A. Yes, sir. Q. Then where? A. It is just strapped along the joists and runs to the compressor.

Q. Is that tubing attached to the compressor? A. Attached. Q. You could not loose it without loosening the bolts? A. No. Q. Now, in the basement I observe that there. the compressor sets on the floor, and that there were some tubes running out of the compressor to a board which is about 3 feet long and about 6 or 8 inches wide. Have you observed that board? A. I put it there. Q. And is that board nailed? A. Screwed. Q. It is screwed solidly to the wall? A. It is screwed into the wall. Q. How much of conduit work do you suppose is under the building? A. 20 or 30 feet under the building; the rest goes in between the walls. Q. And you could not pull the conduit work out without tearing away the plaster? A. No. Q. You could not remove any portion of the frigidaire equipment, could you, either the compressor or the conduit or the tubing or any portion of it, without either cutting some of the bolts or unscrewing bolts or taking out screws, or taking out nails, could you? A. Well, that would be an impossibility. It would not be there if it was not fastened up. Q. In other words, all the nails, bolts and screws there to hold it in place are absolutely necessary? A. They are necessary to the operation of the frigidaire; yes, sir. Q. Would there be any injury to the building if you took out the conduit? A. I presume there would. Q. You would have to tear away the plastering on the wall to do that? Mr. Keefer: (Attorney for appellant): What is in the partitions cannot be taken out without serious injury to the building. We admit that. Q. Is there any part of the conduit that can be taken out without injury to the building? A. No, you could not pull any of it out without damage. The damage would have to be repaired. Q. And the conduit was all put in as part of the installation for this particular refrigerator unit? A. It was put in to protect the frigidaire tubing. Q. As part of the contract? A. I presume so.''

Mr. Andrews, a witness called on behalf of the defendant, testified as to the manner in which the refrigerator and equipment was installed, fastened by bolts, nails and screws. Without quoting the testimony further, it shows that the frigidaire and all of the equipment was so attached to the building that it could not be removed therefrom without damage; that it was fastened by bolts, nails and screws,

in such a manner as to support the finding of the court that it had become a part and parcel of the building.

We do not need to follow the argument of appellant as to the law relative to conditional sales contracts and their validity as between the contracting parties and persons having notice thereof; nor need we review the cases cited by counsel referring to conditional contracts of sale of personal property where the personal property is never affixed to, or incorporated into buildings so as to become a part of the realty.

The circumstances shown by the testimony set forth in the record not only amply support the finding of the court, but bring it squarely within the language used in the opinion of one of the cases relied upon by the appellant, which nevertheless shows that the appellant's contention is untenable. We refer to the case of *Marker* v. *Williams*, 39 Cal. App. 674 [179 Pac. 735, 736, where the court had before it the identical question which we have here, save and except that knowledge was conveyed to the purchaser of the property, of the manner in which the owner or lessee of an hotel had installed a frigidaire equipment. The court, among other things, said: As shown by the agreed statement of facts, a refrigerating plant, consisting of a number of named articles, was attached by bolts, screws, nails, etc., and after stating that it was so attached it did not support any part of the hotel building, used the following language: "We are of the opinion that the character of the machinery, the use for which it was intended in connection with the hotel, the manner in which it was installed and the apparent intent of its annexation, filled all the requirements of sections 660 and 1013 of the Civil Code to constitute it a fixture, as between the grantor and a grantee relying in good faith on appearances, and without notice of anything to the contrary." And further: "It may be conceded that if the defendant had relied in good faith on merely what he saw in the inspection of the premises, or if on inquiry of the owner and the lessees he had been informed that the refrigerating plant had been built in originally as a part of the hotel building, and relying upon this information had bought the property in the belief that the refrigerating plant was a part of the real property, he would be entitled to all the protection due

to an innocent purchaser for value and without notice.'' The opinion further shows that the purchaser was informed that the refrigerating plant had been installed by a lessee of the hotel as a trade fixture, and therefore was subject to the provisions of the conditional contract of sale. What is said in the case, however, is pertinent to the case at bar because it satisfactorily appears that the owners of the building contracted to have the frigidaire equipment installed as a part and parcel of the building, and had no notice that it had not been paid for by the contractor, and the manner in which payment was made according to the contract and the law applicable thereto, the defendants not having availed themselves of filing any mechanic's lien, were estopped to deny that the property, by reason of its installation in the manner set forth, had become the property of the owners of the real estate.

Another case strongly relied upon by the appellant is that of *Southern California Hardwood etc. Co.* v. *Borton,* 46 Cal. App. 524 [189 Pac. 1022], commonly known as the ''wall-bed'' case. An examination of the opinion, however, shows that the wall-beds involved in that action could be removed without unscrewing any screws, removing any nuts, cutting any bolts, drawing any nails, or doing anything further than simply lifting the beds off of supporting brackets which were left in place.

It likewise appears in the case of *Kirkman Nurseries* v. *Sargent,* 42 Cal. App. 290 [183 Pac. 591], that the person acquiring title to the land did so with full knowledge of the title of the plaintiff to the trees which were growing in the nursery situate thereon.

Section 1013 of the Civil Code provides that when a person affixes his property to the land of another, without an agreement permitting him to remove it, the thing affixed, except as provided in section 1019, belongs to the owner of the land, etc.

Section 1019 of the Civil Code relates to the removal of trade fixtures.

Section 660 of the Civil Code specifies that when personal property is attached to buildings by means of plaster, nails and bolts and screws, etc., except for purposes not involved in this action, it becomes a part of the realty.

A number of cases are cited by appellant involving questions where the owner of land buys personal property on a conditional contract of sale, which is so attached as to otherwise become a part of the realty, holding that the vendor has a right to remove such property in the event of default in payment. Nothing of that kind is involved in this action.

In 26 C. J. 689 we find the following: "The question of the effectiveness of an agreement for removal as against the landowner, when he is not a party thereto, has arisen not infrequently in the case of an article sold to a contractor by conditional sale, and annexed by him to the land upon which his contract is being performed, and it has usually been decided that the landowner is protected as against the claim of the vendor of the chattel, especially when he made payments to the contractor in ignorance of the conditional character of the sale." A large number of cases are cited supporting the text just set forth.

In the case of *Allis-Chalmers Co.* v. *City of Atlantic,* 164 Iowa, 8 [Ann. Cas. 1916D, 910, 52 L. R. A. (N. S.) 561, 144 N. W. 346], appears a very clear statement of the law applicable to this case. (We quote from the syllabus) : "Where personalty, such as machinery, is to the seller's knowledge sold to be attached to the realty of a third person other than the buyer and used for a particular purpose, in order to bind such third person by a contract of conditional sale between the buyer and seller, such as one reserving title in the seller until full payment, such third person must have actual notice of the reserved title, and his rights are not affected by the contract for payment between the buyer and seller without such notice." And in the notes appended to this case, as reported in Ann. Cas., *supra,* is a long collection of authorities supporting the language of the annotator, which is as follows: "In accord with the rule in the reported case, it is generally held that a vendor under a conditional sale agreement is not entitled to recover the property so sold, or .the value thereof, where is appears that it has, with knowledge of vendor, been so attached to the realty of a third person as to become a part thereof, with no notice to the owner of the realty of the reservation of title in the vendor. Thus, where a vendor delivers property to a contractor under a conditional sale agreement, with knowledge of the fact that the property is to be attached to the realty

of a third person, and, the property is so attached and becomes a part thereof before the owner has notice of the reservation of title, the vendor is not entitled to recover possession of the property or the value thereof as against the owner." The number of cases there collected supporting the text are too numerous to be here listed.

The reasons supporting the rule just stated are fully set forth in the case of *Jermyn.* v. *Hunter,* 93 App. Div. 175 [87 N. Y. Supp. 546, 549]. We quote therefrom as follows: "If vendors of personal property seek to make a conditional sale, they should be required to deal with the owner of the property, and not alone with the contractor without notice to the owner. Unless they do, there is no justification for imposing an incumbrance upon the building without the owner's knowledge or consent." Speaking of the owner it is said: "He might fulfil his contract to the letter and pay his contractor for every article which went into the building, and having fully paid therefor, find that he did not own it, and be compelled either to pay again or submit to the dismantling of the entire structure, and in addition be mulcted in damages. Under such a rule it is quite possible to work all of this mischief, and this without notice to the owner or knowledge upon his part in any form of the existence of such a contract." Other reasons are set forth, but these are sufficient to show that the equities are with the owner, and not with one who sells property on a conditional sales contract knowing that it is to become a part and parcel of a building belonging to a third person who has no notice of the conditional sales agreement.

It follows from what we have stated that the judgment of the trial court upon the issues tendered by the defendant's cross-complaint and the plaintiffs' answer thereto, were correctly decided and are sufficient to support the judgment that the defendant has no interest or ownership in the property, and is not entitled to recover possession of the same, and that the judgment should be affirmed. And it is so ordered.

Preston, P. J., and Thompson (R. L.), J., concurred.