Provus Brothers Incorporated, Trading as Provus
Bros. Company, Appellant, v. Axel K. Sjolander
and Anna C. Sjolander, Appellees.

Gen. No. 37,029.

Opinion filed February 5, 1934.

SAMUEL & FRANK, for appellant.

ERNEST A. EKLUND and FREDERICK J. BERTRAM, for
appellees.

MR. JUSTICE McSURELY delivered the opinion of the
court.

Plaintiff brought an action in trover to recover $385,
the alleged value of 10 Murphy Roller Beds which
plaintiff claimed defendants maliciously converted to
their own use. Upon the trial the court instructed the
jury to find for the defendants and plaintiff appeals
from the adverse judgment.

A number of reasons are presented in support of the judgment but we shall note only one. The beds were sold under conditional sales contracts and plaintiff invokes section 23 of the Uniform Sales Act, ch. 121a, Illinois Statutes (Cahill, ¶ 26), which provides that:

"Subject to the provisions of this Act, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell." The defendants invoke the latter part of the statute, which provides that the owner of the goods by his conduct may be precluded from denying the seller's authority to sell. In *Dayton Scale Co. v. General Market House Co.*, 335 Ill. 342, the judgment of the lower court was reversed because the trial court had sustained an objection to certain evidence tending to show that the conduct of the owner precluded him from denying the seller's authority to sell. In *Drain v. LaGrange State Bank*, 303 Ill. 330, it was held that this estoppel does not depend upon where the actual title is, but rests upon the act of the real owner, "which precludes him from disputing the existence of a title which he has caused or allowed to appear to be vested in another." In harmony with this is *Sherer-Gillett Co. v. Long*, 318 Ill. 432.

What was the conduct of the plaintiff which precludes it from asserting any title or claim to the beds as against the defendants? In the fall of 1929 the Hurlburt Towers Building Corporation was engaged in erecting an apartment building, to be equipped with ice boxes, stoves, in-a-door beds and other like conveniences; these in-a-door beds are so constructed that they may be folded up and be placed in a closet so as to be out of the way during the daytime; sometimes

they are actually fastened to the structure of the building and sometimes not; the Murphy Roller beds in this case were of the latter type. George M. Calas was president of the building corporation; plaintiff was furnishing certain equipment for the building among which were the roller beds in question; they were sold under the usual form of conditional sales contract where the title is retained in the seller until the goods have been paid for. The first sales contract was in October, 1929, for four beds; the next was in November for three beds, and the third was in January, 1930, for three beds, making 10 beds in all. In all of these contracts George M. Calas is the buyer; each contract provided for payment in monthly instalments, which would complete the payments within three months of the date of each contract, respectively.

Plaintiff delivered these beds to the building corporation at the building, knowing that they were to be placed in the bed closets in the various apartments to be used by tenants of the building; it also knew that the beds were so used by tenants. Plaintiff also knew that the title to the building was not in Calas, to whom the beds were sold, but in Hurlburt Towers Building Corporation. After the beds were installed in the building plaintiff inspected and checked them. In November, 1929, plaintiff received payment of $200 for carpets used in the building and at this time executed what purports to be waivers of all claims on account of labor and materials furnished to the building.

Defendants acquired title to the real estate and building from the Hurlburt Towers Building Corporation by warranty deed dated March 20, 1930, which was duly recorded March 22, 1930; at the same time they were given an affidavit by Calas saying, in substance, that there were no unpaid outstanding claims in connection with the building. Plaintiff had not only constructive notice of this sale but there was evidence

tending to show that it had actual notice. Plaintiff did
not assert any claim against defendants under the con-
ditional sales contracts until about three years after
Calas had defaulted upon his contracts to pay for the
beds, although plaintiff sought to show that it had sent
a letter at an earlier date informing defendants that
the beds had not been paid for. Defendants deny hav-
ing received these communications. During all this
time defendants were leasing apartments with the beds
to tenants.

In *Haines v. Doss,* 269 Ill. App. 179, the plaintiff
permitted the purchaser of an automobile under a con-
ditional sales contract to retain possession for 10
months after the last payment became due and for
seven months after the last payment was made; the
defendant, Doss, recovered a judgment against the
purchaser and caused an execution to be levied upon
the automobile; the court held that the plaintiff could
not recover from Doss as he had not asserted his
rights under the conditional sales contract within a
reasonable time after the expiration of the time of
final payment. In its opinion the court suggests an
analogy between the lien of a chattel mortgage and
that under a conditional sales contract; that the lien
under the chattel mortgage will expire if the mort-
gagee does not act within a reasonable time after the
mortgage becomes due. The court then said: "Con-
ditional sales contracts are secret or private liens of
which the public can generally have no knowledge.
We can see no reason why the secret liens of condi-
tional sales contracts should be endowed with greater
potency than liens provided by chattel mortgages. To
hold that the vendor in a conditional sales contract
should be protected with a perpetual lien until the
article sold is completely paid for would open the
doors to unlimited fraudulent transactions and might
extend its protection to the vendor and also to the

vendee in such a contract against other creditors of the vendee for at least the period provided by the statute of limitations. It is our opinion that a vendor should assert his rights under a conditional sales contract within a reasonable time after the expiration of the time of the final payment thereunder.'' The decision in that case is said to be in conflict with *Silverthorne v. Chapman,* 259 Ill. App. 289. In this latter case the creditor levied upon an automobile which was in the possession of a purchaser under a conditional sales contract. It was held that as the last instalment had not become due under the contract when the seizure of the automobile was made, it was not incumbent upon the owner to exercise any rights until the full maturity of the debt. In *American Type Founders Co. v. Metropolitan Credit & Discount Corp.,* 271 Ill. App. 380, the owner permitted the buyer under a conditional sales contract to retain possession of the property about four months after the indebtedness matured; the buyer then made a chattel mortgage on the property. It was held that the evidence did not show an unreasonable delay on the part of the owner such as would preclude him from maintaining his claim under his contract.

Courts do not look with favor upon secret liens, and we are inclined to be in accord with what was said by the court in *Haines v. Doss, supra.*

Certainly in the instant case to wait for three years before plaintiff asserted its claim for the beds, while permitting the defendants during this time to believe that they had bought them with the building and owned them, and to exercise the rights of ownership in renting them in apartments, was an unreasonable delay which amounts to conduct precluding plaintiff's right.

Moreover, when plaintiff delivered the beds to the building corporation for use in the building, while its

secret conditional sales contracts were with Calas, it enabled the building corporation to commit a fraud upon the defendants, who bought the building with the equipment free from any and all claims. The building corporation was not a party to the sales contracts but it was given possession of the beds and was permitted to hold itself out as the owner of them. A tenant of the building corporation using one of the beds could not be held answerable for such use to the plaintiff. Neither can the defendants, who bought from the building corporation, be held answerable under a secret contract made with another party. *Gordon Motor Finance Co. v. Aetna Acceptance Co.*, 261 Ill. App. 536, is applicable to the instant case. There the vendor sold to one Monroe an automobile under a conditional sales contract; Monroe delivered possession to the company of which he was president, which was engaged in selling automobiles; the vendor knew this. It was held that in so doing the vendor gave the buyer an opportunity to perpetrate a fraud upon an innocent purchaser; that section 23 of the Uniform Sales Act, Cahill's St. ch. 121a, ¶ 26, was intended to protect vendors under conditional sales contracts who could not reasonably foresee or anticipate a resale of chattels before they were fully paid for, and who, through no act of theirs, could make possible the perpetration of a fraud on an innocent purchaser. In the instant case the acts which we have referred to made possible the perpetration of a fraud upon the defendants. A somewhat similar state of facts was involved in *Frick v. Frigidaire Corp.*, 119 Cal. App. 707, 7 Pac. (2d) 321, where the holding was against the vendor "who sells property on a conditional sales contract knowing that it is to become a part and parcel of a building belonging to a third person who has no notice of a conditional sales agreement."

For the reasons above indicated, we hold that the plaintiff is precluded from asserting any claim against the defendants under its conditional sales contracts, and the judgment is therefore affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.