[Civ. No. 28202. First Dist., Div. Two. Nov. 30, 1971.]

EAC CREDIT CORPORATION, Plaintiff and Appellant, v.
WILLIAM A. BASS, Defendant;
HARRY R. JOHNSON FARMS, Third Party Claimant and Respondent.

**COUNSEL**

Langer & Simpson and J. C. Simpson for Plaintiff and Appellant.

Pioda, Leach, Stave, Bryan & Ames and Robert H. Ames for Third Party Claimant and Respondent.

No appearance for Defendant.

## OPINION

**DAVID, J.**[*] — Plaintiff EAC Credit Corporation brought a claim and delivery action to recover personal property sold to William A. Bass on a conditional sales contract. Pursuant thereto, the sheriff took possession of such property, being equipment of Bass' drycleaning establishment. This included fixtures which were severed from the real property Bass had occupied. Harry R. Johnson Farms, a corporation, respondent herein (hereinafter designated as "HRJ") filed a third party claim, alleging that their tenant, CAE Investment and Realty Corporation (hereinafter designated as "CAE")[1] had defaulted, and both it and its franchisee Bass had abandoned the leased premises, thereby vesting it with title to the fixtures in question.

On May 29, 1967, a 20-year lease was executed by HRJ, as lessor, and CAE, as lessee. The lease provided that any additions to or alterations of the leased premises, except movable furniture and trade fixtures, should become at once a part of the realty and belong to the lessor. It was further provided that if the lessee should abandon, vacate or surrender the leased premises, any personal property belonging to the lessee and left on the premises should be deemed abandoned, at the option of the lessor. The lease contained a provision prohibiting the lessee from assigning the lease or subletting the premises without first obtaining the written consent of the lessor. However, a separate provision of the lease provided that "Lessee shall not assign this lease without the prior written consent of Lessor, but Lessee may sub-lease to a franchisee of Lessee."

On June 6, 1967, Bass purchased the cleaning equipment which was to be installed on the premises leased from HRJ. The conditional sales contract and negotiable promissory note ran in favor of Koldrick & Company, but were assigned by it to divisions of McGraw-Edison, which was the actual seller of the equipment. The divisions of McGraw-Edison then assigned the conditional sales contract and promissory note to plaintiff EAC Credit Corporation, a wholly owned subsidiary of McGraw-Edison. On July 10, 1967, a financing statement was filed with the Secretary of State of the State of California.

HRJ thereafter completed the various alterations called for in the lease, spending $4,300 to furnish additional plumbing, gas and electrical service

---

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]Note that EAC is not to be confused with CAE. EAC was wholly owned by McGraw-Edison, and CAE was wholly owned by Cal-Am Equipment Company. McGraw-Edison and its subsidiaries were in no way related to Cal-Am and its subsidiaries. We do not detail the complicated interrelationships disclosed by the evidence except as they bear on the ultimate question.

and an additional $4,250 for boiler room partitions, electrical installations and other items.

The equipment which had been purchased by Bass was then installed on the leased premises under the supervision of an employee of Koldrick & Company (or Cal-Am). Numerous holes were drilled in the floor, walls and ceiling, and the equipment was anchored to these surfaces by lag screws. In the opinion of a general contractor who testified on behalf of HRJ, there was no more permanent way in which the equipment could have been affixed to the leased premises.

Harry R. Johnson, the president of HRJ, testified that his leasing agent, Mrs. Bush, had handled all of the preliminary negotiations for him. Johnson had seen the May 11 letter from Koldrick & Company, and he was aware that the property was to be leased to CAE. He also knew that a cleaning establishment would be operated on the leased premises, and he installed the necessary improvements to accommodate the cleaning equipment. Johnson was never advised that the premises had been sublet to Bass, and the rent was always paid by CAE. Johnson recalled visiting the leased premises on one occasion when Bass was present, but he testified that he merely assumed Bass was operating the cleaning establishment for CAE.

In February 1969, CAE ceased paying the rent. Johnson visited the leased premises in late February or early March and found them locked and vacant. Johnson then contacted his attorney, Joseph Stave; and on March 5, the latter wrote CAE and advised it that the lease had been terminated by reason of CAE's failure to pay the rent, its abandonment of the premises and its assigning or subletting of the premises without the lessor's consent.

In mid-March, Johnson changed the locks on the leased premises and took possession of the building and the cleaning equipment, which was still all in place. On March 25, Stave again wrote to CAE and advised it that HRJ had exercised its option to treat the personal property left on the premises as abandoned. CAE never responded to either of the letters written by Stave.

William Bass had in the meantime defaulted on his contract to purchase the cleaning equipment from McGraw-Edison. On April 2, 1969, a representative of plaintiff EAC Credit Corporation, the assignee of the conditional sales contract and promissory note, contacted Stave and stated that he was about to remove the cleaning equipment from the premises previously leased to CAE. Stave asked him if he had the consent of the lessor, HRJ, and he replied that he did. Stave then asked that he bring the consent

in so that Stave could examine it. The EAC representative never complied with this request, and Stave was never shown any writing authorizing the removal of any property from the leased premises. Johnson denied that he ever gave anyone consent to remove any property from the leased premises, and the record contains no evidence to the contrary.

On April 14, 1969, plaintiff EAC Credit Corporation commenced the instant action against defendant Bass, seeking to recover possession of the cleaning equipment.

On April 15, Stave received a telephone call from the sheriff, who advised Stave that he was about to take possession of the cleaning equipment pursuant to plaintiff EAC Credit Corporation's declaration on claim and delivery. He asked for Stave's consent, but the latter refused to give it.

On the following day, April 16, Stave telephoned the sheriff's office and stated that he represented the lessor, HRJ; that HRJ did not consent to the removal of the equipment; that the equipment belonged to HRJ, was not in the possession of defendant Bass and was not being held by HRJ for defendant Bass or as defendant Bass' agent.

The sheriff nevertheless removed the equipment on April 16. Since much of the equipment was permanently affixed to the premises, its removal caused considerable damage and HRJ was required to incur a $3,400 repair bill in order to restore the premises to good order.

HRJ thereafter filed its third party claim in the instant action, asserting that the property removed from the leased premises belonged to it.

The trial court rendered a memorandum opinion in which it found that with the exception of certain furniture and other movable items, the property had been installed on the leased premises in such a permanent fashion that its removal was accomplished only after serious damage to the premises; that a financing statement covering the property had been filed with the Secretary of State on July 10, 1967, but that the third party claimant, HRJ, had no actual notice of the conditional sales contract nor that anyone had or claimed to have any lien on the fixtures; that HRJ had established that the lessee had abandoned the premises, owing a substantial amount of rent, and that the lease had been assigned to Bass without notice to or consent obtained from HRJ, in violation of the lease; that HRJ had duly notified the lessee that it deemed the premises and the property located therein to be abandoned, and that HRJ thereby acquired title to all said property; that HRJ had established its title to all the property affixed to the premises, but that plaintiff EAC Credit Corporation had title to all the movable items of property not so affixed because it held a conditional sales contract which had been duly filed with the Secretary of State.

Judgment was entered dividing the property between the parties in the manner indicated above. Plaintiff EAC Credit Corporation appeals from said judgment, and HRJ is the respondent herein.

In the enactment of the Uniform Commercial Code, the California Legislature omitted section 9-313, which would encompass the situation involved here.[2]

When California enacted section 9-102 of the Uniform Commercial Code, in our Commercial Code, section 9-102, it eliminated the words "or fixtures" in subsection (a) and added subdivision (1), subsection (c), as follows: "To any transaction (regardless of its form) which is intended to create a security interest in goods which are or later become 'fixtures' under the law of this state, *but as against third parties having or acquiring an interest in or a lien on the real property, the rights and duties of the parties to the secured transaction are governed by the law of this state relating to real property and fixtures.*" (Italics added.)

██ The California cases hold that a lessor gains no interest in fixtures which are installed by the lessee but owned by a third party.

In *Hendy* v. *Dinkerhoff* (1880) 57 Cal. 3, one Lampson was in possession of a mill and mine under a contract to purchase same from defendants. The contract provided that any machinery or tools put upon or used in the mill or mine should become the property of defendants in the event Lampson failed to purchase the mill and mine. Lampson leased a steam engine and boiler from plaintiff and affixed them to the mill in such a manner that they could not be removed without causing serious damage to the mill. Lampson subsequently abandoned the mill and mine and the machinery affixed to it, and defendants took possession of them. Plaintiff sued defendant to recover possession of the machinery. The Supreme Court held

---

[2]Section 9-313 of the Uniform Commercial Code (3 U.L.A., § 9-313) provided in subsection (2) that "A security interest which attaches to goods before they become fixtures takes priority as to the goods over the claims of all persons who have an interest in the real estate except as stated in subsection (4)."

Subsection (4) provides that the security interests described in subsection (2) "do not take priority over (a) a subsequent purchaser for value of any interest in the real estate; or (b) a creditor with a lien on the real estate subsequently obtained by judicial proceedings; or (c) a creditor with a prior encumbrance of record on the real estate to the extent that he makes subsequent advances if the subsequent purchase is made, the lien by judicial proceedings is obtained, or the subsequent advance under the prior encumbrance is made or contracted for without knowledge of the security interest and before it is perfected. . . ." Our state Legislature also made certain significant changes from section 9-102 of the Uniform Commercial Code (3 U.L.A., § 9-102), which provides in pertinent part that "this Article applies so far as concerns any personal property and fixtures within the jurisdiction of this state (a) to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures. . . ."

for the plaintiff. The court pointed out that as between plaintiff and Lampson, the machinery remained personal property, despite the fact that it had been attached to the mill, because Lampson had merely leased the machinery from plaintiff. The court held that defendants, as owners of the mill, stood in no better position than Lampson, since they had placed him in possession of the mill and mine, with authority to work them and to bring machinery and tools upon the property.

The *Dinkerhoff* case was followed in *Best Manufacturing Co.* v. *Cohn* (1906) 3 Cal.App. 657 [86 P. 829]. In that case, the lessee purchased a gas engine and attachments from plaintiff under a conditional sales contract. The machinery was permanently affixed to the leased property, under plaintiff's direction. Defendant, who owned the property, was unaware of the conditional sales contract and did not know that the machinery was not fully paid for. The lease provided that in the event of a breach of covenants by the lessee, defendant might terminate the lease and that the leased land and all improvements placed thereon would then revert to him. The defendant terminated the lease for breach of covenants, and took possession of the land and machinery. The lessee also had defaulted on the conditional sales contract, and the plaintiff seller brought suit against defendant to recover possession of the machinery. Relying upon the *Dinkerhoff* case, it was held that the plaintiff was entitled to prevail, even though the lease was of record when plaintiff furnished the machinery to the lessee. The court pointed out that it was the intention of both plaintiff seller and the lessee that the machinery remain personal property, and that defendant lessor stood in no better position than his lessee. The court noted that if any injury was done to the realty by the removal of the machinery, defendant had his remedy against his tenant (p. 660).

*Byron Jackson Iron Works* v. *Hoge* (1920) 49 Cal.App. 700 [194 P. 45], involved a similar factual situation. Defendants leased certain mining premises to a tenant who purchased a pump and electric motor from the plaintiff under a conditional sales contract. The machinery was affixed to the leased premises. The lessee never completed the purchase of the machinery and left it on defendants' property when it gave up its lease thereto. Plaintiff then brought suit against defendants to recover the machinery, and plaintiff prevailed in the trial court. The appellate court held that this result was clearly correct under the rule of the *Dinkerhoff* case. The court pointed out that defendants had placed the lessee in possession of the mining premises with knowledge that he would have to purchase the necessary equipment and machinery to operate same. "Under such a state of facts, and under the long-established rule of decision in this state that conditional sales are valid, it must be held in this case, as in the *Dinkerhoff* case, that the

pump and motor were personal property in the hands of the defendants the same as while in the possession of their lessees." (P. 705.)

The *Dinkerhoff* case was again followed in *Garnette* v. *Mankel* (1945) 71 Cal.App.2d 783 [163 P.2d 466], and it is clear that the rule therein espoused is still the law of this state.

Respondent HRJ contends that the instant case is controlled by *Frick* v. *Frigidaire Corp.* (1932) 119 Cal.App. 707 [7 P.2d 321]. However, that case is readily distinguishable on its facts. A property owner employed a general contractor to construct certain improvements on the property and to permanently install certain refrigeration equipment purchased from defendant under a conditional sales contract. Defendant knew of the agreement between the contractor and the landowner and also knew that the refrigeration equipment was to be installed as a permanent part of the realty. The property owner, on the other hand, knew nothing of the conditional sales contract and paid the contractor the full price agreed upon. The appellate court held that the landowner, and not the conditional vendor, was the owner of the equipment. The court reasoned that a conditional vendor who sells equipment to a contractor knowing that it is to be permanently attached to realty has a duty to notify the property owner of his reservation of title in the equipment. The court said that if the rule were otherwise, the property owner might find that after paying his contractor in full for every item installed, he was still compelled to pay again, or submit to the dismantling of the entire structure, and in addition to be mulcted in damages (p. 715).

The *Frick* case is doubtless a correct statement of the law as it applies to a conditional vendor who sells equipment to a general contractor for permanent installation on the premises of a third party landowner. However, the rule of the *Dinkerhoff* case controls where the landowner is relying upon the terms of a lease to recover property purchased by his lessee under a conditional sales contract. Since the lessor must stand in the shoes of the lessee, he cannot prevail against the conditional vendor unless the lessee could have done so. (22 Cal.Jur.2d, Fixtures, § 11, pp. 272-273.)

The instant case is factually indistinguishable from the *Dinkerhoff* line of authority. ■ Respondent HRJ, as lessor, claimed title to the cleaning equipment by virtue of certain provisions which were contained in the lease to CAE and which were binding upon the sublessee, William Bass. (*Johnson* v. *Couch* (1961) 189 Cal.App.2d 687, 691 [11 Cal.Rptr. 645].) Since respondent was asserting rights through its subtenant, respondent was required to stand in the latter's shoes. Bass was merely a conditional purchaser of the cleaning equipment, and he defaulted on the payments due the conditional vendor and forfeited his right to any interest in the equipment. Respondent stands in no better position.

■ ■ Respondent contends that a different rule should apply in the instant case because respondent negotiated the lease with Koldrick & Company (or Cal-Am), leased the property to CAE and was never notified that the property had been sublet to Bass. However, these facts are of little real significance. Respondent was advised in the May 11 letter from Koldrick & Company that the property was to be sublet to a franchisee, and the lease expressly authorized CAE to sublet to a franchisee.

The finding of the trial court that the franchise or sublease to Bass violated the terms of the lease thus is unsupported by the evidence. Respondent was well aware that a cleaning establishment was to be operated on the leased premises and that the necessary equipment was to be installed and affixed to the premises. Respondent itself undertook extensive remodeling work in order to accomodate the cleaning equipment. Under these circumstances, respondent must stand in the shoes of its sublessee as against the conditional vendor, and respondent's claim to the cleaning equipment must fail. As for any damage caused by the removal of the equipment or by any other breach of the lease, respondent's remedy was against its tenant, CAE. (*Best Manufacturing Co.* v. *Cohn, supra,* at p. 660.)

The accession section of the Civil Code, section 1013, cited by respondent, is inapplicable, since it relates only to the situation where one person attaches *his* property to the land of another.

■ Respondent contends that even if appellant EAC, as the assignee of the conditional vendor, was the owner of the cleaning equipment affixed to the premises, the trial court was still correct in awarding it to respondent because the instant action was fatally defective. Respondent asserts, specifically, that the plaintiff in an action for claim and delivery must allege and prove that the property he seeks to recover was in the possession of the defendant. Respondent points out that the complaint of appellant EAC alleged that the equipment was in the possession of defendant Bass, whereas the proof adduced at the trial conclusively established that Bass had abandoned possession of the equipment and leased premises prior to the commencement of the action, and that the same were in the possession of respondent.

Respondent bases this contention upon *California Packing Corp.* v. *Stone* (1923) 64 Cal.App. 488 [222 P. 193]. That case bears little resemblance to the case at bar. There, the plaintiff brought a claim and delivery action against certain defendants. The evidence showed that parties other than defendants were actually in possession of the property. The trial court gave judgment against defendants for the recovery of the property or the value thereof. The appellate court held this improper, since defendants were not in possession of the property and hence were in no position to deliver it to

plaintiff. However, the court held that since defendants had filed an answer disputing plaintiff's right to possession of the property, plaintiff was entitled to recover its costs against defendants.

In the instant case, there is clearly no basis for any claim by respondent that it was required by the trial court to deliver to appellant property which was not in respondent's possession. Respondent had exclusive possession of all the property subject of this action. If Bass was wrongly named as a defendant and incorrectly alleged to have possession of the property, respondent has no cause whatever for complaint, since it filed a third party claim to the property and it voluntarily litigated the issue of ownership and right to possession of the property. The case was ultimately litigated between the proper parties—appellant, who claimed ownership of the property, and respondent, who was in exclusive possession of the property when the action was commenced.

■ Upon argument before us, Harry R. Johnson, the third party claimant, first suggested that the holding of *Blair* v. *Pitchess,* 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242], on July 1, 1971 retroactively condemned the California claim and delivery procedure. However, in the court below such contention was not raised. The question of title was fully and fairly litigated there and before this court. Pursuant to the judgment below, both parties took possession of such items then held to be theirs.

*Blair* v. *Pitchess, supra,* was not retroactive and is to be applied prospectively.

It enjoined the prospective application of the claim and delivery procedures (Code Civ. Proc., §§ 509-521) in effect since 1872. (*Forster Shipbldg. Co.* v. *County of L. A.* (1960) 54 Cal.2d 450, 459 [6 Cal.Rptr. 24, 353 P.2d 736]; *Larez* v. *Shannon* (1970) 2 Cal.3d 813, 816 [87 Cal.Rptr. 871, 471 P.2d 519].)

The judgment is reversed, with directions to the trial court to award all of the property subject of this action to appellant EAC Credit Corporation. Each party will bear its own costs.

Taylor, P. J., and Kane, J., concurred.